**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, Plaintiff,**

v.

**Donald J. DEVINE, and United States of America, Defendants.**

**Civ. A. No. 81–2239.**

United States District Court, District of Columbia.

Oct. 8, 1981.

On Motion for Clarification Oct. 15, 1981.

James R. Rosa, Kevin Grile, AFGE, Washington, D. C., for plaintiff.

R. Craig Lawrence, Asst. U. S. Atty., Washington, D. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GESELL, District Judge.

American Federation of Government Employees (AFGE) has submitted to the Office of Personnel Management (OPM) a health benefit plan in accordance with the provisions of the Federal Employees Health Benefits Act (FEHB), 5 U.S.C. § 8901 *et seq.* (1976 & Supp. III 1979). In the course of negotiating the benefits and funding for the plan, the Director of OPM, Honorable Donald J. Devine, announced on September 24, 1981, that OPM would not approve any health benefit plan which provides abortion coverage except coverage for abortion "where the life of the mother would be endangered if the fetus were carried to term."

AFGE challenges[1] the legality of this OPM decision and asks that its Director be enjoined from excluding full coverage for therapeutic abortions as provided in AFGE's 1981 plan. Defendants have moved to dismiss and for summary judgment. Various affidavits are on file and the issues have been fully briefed and argued. All parties agree that the matter presents primarily an issue of law and is ripe for final resolution.

As an initial matter this Court unquestionably has jurisdiction under 5 U.S.C.

---

1. Plaintiff filed its original complaint and motions for injunctive relief on September 15, 1981, charging that OPM threatened to exclude a full description of AFGE's abortion coverage from the brochure explaining AFGE's 1982 plan. On September 23, 1981, after hearing oral argument, the Court denied plaintiff's request for a temporary restraining order on the ground that the controversy was not ripe. The following day the Office of Personnel Management decided to exclude abortion coverage from 1982 health benefit programs. In response to this decision the plaintiff filed a supplemental complaint and renewed its motions for injunctive relief.

§ 8912 (1976) to review defendant Devine's administration of the FEHB. *See National Treasury Employees Union v. Campbell*, 589 F.2d 669 (D.C.Cir.1978). Furthermore, in view of the strong presumption of reviewability of agency action, *see Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), the Court finds that in the words of the Administrative Procedure Act, no "statutes preclude judicial review" and OPM's action here is not wholly "committed to agency discretion by law." *See* 5 U.S.C. § 701(a) (1976).

In reviewing Director Devine's decision to remove coverage for therapeutic abortions where the life of the mother is not endangered the Court must decide whether he acted within the scope of his authority and whether his decision was arbitrary and capricious. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415–16, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). While the Director has discretion to administer the FEHB in an efficient and effective way, the scope of his discretion is limited by the language of the statute and by the purposes for which it was enacted.

■ The Act provides:

Each contract under this chapter shall contain a detailed statement of benefits offered and shall include such maximums, limitations, and exclusions, and other definitions of benefits as the office considers necessary or desirable. 5 U.S.C. § 8902(d) (1976).

It is clear from a reading of the statute as a whole and its legislative history that Congress's purposes in enacting the FEHB were to protect federal employees against the high and unpredictable costs of medical care and to assure that federal employee health benefits are equivalent to those available in the private sector so that the federal government can compete in the recruitment and retention of competent personnel.[2] The types of benefits to be provided were broadly defined, *see* 5 U.S.C. § 8904 (1976), in order to permit appropriate changes in health benefit coverage as medical technology advanced and the types of coverage offered in the private sector evolved.[3] Competition among providers of health benefit plans was contemplated to permit employees maximum freedom of choice.[4] There is nothing in the Act which authorizes OPM unilaterally to exclude from a plan a type of benefit which is normally found in comprehensive health plans. Rather, the statute contemplated that through a process of negotiation a plan would be fashioned agreeable to both sides which could be put into effect for an overall price that OPM found acceptable for all benefit plans submitted. Although OPM may exclude a benefit that is inordinately expensive in relation to the value of the services received, OPM's decision must be scrutinized to determine whether the cost justification is supported by facts and whether OPM is proceeding rationally and reasonably in the light of the purposes and objectives of the statute.

■ OPM acted arbitrarily and outside the scope of its authority when it excluded therapeutic abortion coverage from the AFGE benefit plan. The Court sought a full explanation of the decision made with respect to therapeutic abortions but both sides stated in open court that there was sufficient factual material in the record to permit the Court to go to final judgment.[5] OPM has chosen to stand on the following statement found in an affidavit of Honorable Donald J. Devine:

My decision with respect to the foregoing maximum abortion benefit was based, *inter alia*, on the following grounds: (a)

---

2. See S.Rep.No.468, 86th Cong., 1st Sess., 1–2 (1959) (hereinafter cited as Senate Report); H.R.Rep.No.957, 86th Cong., 1st Sess., 1–2 (1959), reprinted in [1959] U.S.Code Cong. & Admin.News 1959, p. 2913.

3. *See* Senate Report at 10.

4. *See* Senate Report at 3.

5. Expeditious resolution of this controversy was also required by the need of OPM to finalize and publish brochures describing the 1982 health benefit plans. Counsel for defendants indicated that OPM planned to commence printing brochures early in the week of October 12.

my judgment, based on the totality of the circumstances, as to costs of the 1982 FEHB program; (b) the need for stability in planning the FEHB program, in light of the manifest probability of Congressional action limiting or excluding FEHB abortion benefits; and (c) the advantages of conforming OPM's spending elections to policies regarding the use of Federal funds which have been established by Congress and the President, such as in the Hyde Amendment.

Affidavit of Donald J. Devine, October 2, 1981.

On examining this statement, the Court is forced to conclude that Mr. Devine's stated reasons lack any rational basis and that he has been prompted primarily by ideological considerations, considerations alien to the purposes of the statute.

(a) There is no indication in the record that including therapeutic abortion coverage in AFGE's plan will significantly affect cost. Indeed, the only facts in the record on the cost issue suggest that eliminating abortion coverage might actually increase the amount of money expended for other benefits. Affidavit of Lawrence Keck, October 6, 1981. Furthermore, eliminating certain other benefits from AFGE's package of benefits could fully compensate for this item. Finally, under 5 U.S.C. § 8906 (1976), the amount of the government's contribution to health benefit plans is determined by the costs attributed to the group of "big six" health benefit plans, of which AFGE is not a member.

(b) There is no indication that Congress is likely to act one way or the other on this amendment. The House of Representatives has voted to prohibit therapeutic abortion coverage, 127 Cong.Rec. H5391 (daily ed. July 30, 1981), but a Senate committee considering the same appropriation has voted 13 to 7 to the contrary. Mr. Devine's attempt to guess how Congress will act on this important issue now under intense consideration by that body represents usurpation of democratic processes. Stability in planning will necessarily have to await definitive congressional action.

(c) Neither the Hyde Amendment nor President Reagan's policy statements offer support for OPM's action. The Hyde Amendment limited the use of federal funds to reimburse the cost of abortions under the Medicaid program. Removing abortion coverage as an element of federal employees' total compensation package arguably raises different policy issues. *See* 127 Cong.Rec. H5381–91 (daily ed. July 30, 1981) (House debate on Ashbrook Amendment). In addition, OPM does not assert that it is acting pursuant to a specific directive from the President.

In short, it is apparent from close scrutiny that the OPM decision was not based on relevant factors and that the Director has abused his statutory authority. AFGE's claim that it has already reached a binding agreement with OPM on its 1982 plan to include therapeutic abortion coverage is not supported by the facts and is rejected. It is unnecessary to consider AFGE's constitutional claims.

Defendants' motion to dismiss or for summary judgment is denied. A permanent injunction shall issue as set forth more fully in an Order filed herewith.

## ON MOTION FOR CLARIFICATION

■ The defendants have moved for clarification of this Court's Order of October 8, 1981, permanently enjoining defendants from limiting abortion coverage in AFGE's 1982 health benefit plan. The Court's Order provided that it should not "be deemed to apply if the Office of Personnel Management is prohibited by statute from funding therapeutic abortion coverage under 1982 benefit plans." By their motion, defendants seek a ruling from the Court as to whether Public Law 97–51, enacted October 1, 1981, is such a prohibitory statute. Defendants claim that Public Law 97–51, 95 Stat. 958, prevents the Office of Personnel Management (OPM) from incurring expenses in the administration of any health benefit plan which provides coverage for abortions, except coverage for abortions where the life of the mother would be endangered if the fetus were carried to term.

Public Law 97–51 is a Joint Resolution of Congress making continuing appropriations for fiscal year 1982. It is clear beyond peradventure that Public Law 97–51 does not prohibit OPM from funding coverage for therapeutic abortions or incurring administrative expenses in the administration of any health plan including such coverage. Section 101(a)(3) of the Joint Resolution provides *inter alia*:

> That funds which would be available under H.R. 4121, entitled the Treasury, Postal Service and General Government Appropriation Act, 1982, for the Government payment of annuitants and employees health benefits, shall be available under the authority and conditions set forth in H.R. 4121 as reported to the Senate on September 22, 1981.

The version of H.R. 4121 reported to the Senate by the Committee on Appropriations on September 22, 1981, eliminated in its entirety Section 619 of the bill, which barred expenditures for therapeutic abortions or for the administration of plans covering therapeutic abortions. As a result, the Joint Resolution adopted the Senate Committee's position that OPM should continue to fund therapeutic abortions and make necessary expenditures for the administration of plans covering therapeutic abortions.

No further clarification is required and the defendants' motion is denied. The defendants shall proceed to carry out the Court's Order of October 8, 1981.

SO ORDERED.