John and Joan DOE, et al., and Richard Roe, et al., Plaintiffs,

v.

Donald J. DEVINE, Director, Office of Personnel Management, et al., Defendants,

and

Blue Cross Association and Blue Shield Association and Aetna Life Insurance Company, Defendants-Intervenors.

Civ. A. Nos. 81-2878, 81-2927.

United States District Court, District of Columbia.

May 5, 1982.

Joseph Onek, Joel I. Klein, Peter E. Scheer, Onek, Klein & Farr, Martin J. Gaynes, Bonner, Thompson, O'Connell, Gaynes & Middlekauff, Washington, D. C., for Doe.

Margaret F. Ewing, Donald N. Bersoff, Ennis, Friedman, Bersoff & Ewing, Washington, D. C., for Roe.

Asst. U. S. Atty. R. Craig Lawrence, Civ. Div., Washington, D. C., for Federal defendants.

Philip S. Neal, Washington, D. C., for Blue Cross/Blue Shield.

` Leonard W. Belter, Washington, D. C., for Aetna.

## MEMORANDUM OPINION

FLANNERY, District Judge.

These consolidated cases come before the court on cross-motions for summary judg-

ment. Defendants seek summary judgment on the grounds that the Office of Personnel Management (OPM) has, pursuant to the Court of Appeals' mandate, furnished a complete, reasonable explanation for its decision to accept mental health benefit cutbacks in the Blue Cross/Blue Shield (BC) federal health insurance plan. This explanation, according to defendants, lays to rest any contention that OPM's decision was arbitrary or capricious. Plaintiffs seek summary judgment on the grounds that the affidavit furnished by OPM is legally deficient in several critical respects. In the alternative, plaintiffs contend that defendants' summary judgment motions cannot be granted because there are genuine issues of material fact with respect to certain claims proffered by plaintiffs.

## I. *Background*

OPM has negotiated a contract for the provision of government-wide health insurance benefits with BC, pursuant to the provisions of the Federal Employees Health Benefit Act (FEHBA), 5 U.S.C. §§ 8901 *et seq.* (1976 & Supp. III 1979). The contract announced reduces both inpatient and outpatient mental health benefits below 1981 levels and below the benefit levels provided for physical illness. The high option plan reduces mental health outpatient payments from 70% of an unlimited number of visits to 70% of an annual total of 50 visits with a lifetime maximum of $50,000. The agreed to high option plan also reduces inpatient hospitalization benefits for mental illness from 365 days per year to 60 days per year. For physical illness, outpatient visits were similarly reduced. Payment will be made for 80% of charges for a maximum of 50 visits. Coverage for inpatient hospitalization for physical illness will extend for unlimited days.

Plaintiffs' motions for preliminary injunction, denied by this court on December 2, 1981, challenged the mental health benefit cuts in the BC plan on four independent bases: (1) as violative of the equal protection component of the Due Process Clause of the Fifth Amendment; (2) as violative of

section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (1978); (3) as contrary to section 8904 of the Federal Employees Health Benefit Act, 5 U.S.C. § 8904; and (4) as arbitrary and capricious and an abuse of discretion within the meaning of section 706(2)(A) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1976). The Court of Appeals, in affirming the denial of preliminary injunctive relief, agreed with this court that there was little likelihood that plaintiffs would succeed on the merits of their Rehabilitation Act and substantive FEHBA claims. *Doe, Roe v. Devine*, Nos. 81-2378, 81-2400, slip op. at 2 (D.C.Cir. Feb. 23, 1982).[1]

The Court of Appeals was "less confident" about plaintiffs' claim that OPM acted arbitrarily or capriciously by approving the cutbacks at issue. *Id.*, slip op. at 2, 4. The Court expressed concern that the agency had not provided a particularized explanation of its decision-making process, focusing upon how the cutbacks in mental health benefits could be harmonized with the policies embodied in section 8904. *Id.*, slip op. at 4. The Court indicated that such a "reasoned explanation" should explicate why OPM accepted "the particular package of benefits proposed by Blue Cross/Blue Shield rather than requiring a package of benefits with the same overall financial cost but with less serious consequences on one category of 'catastrophic' coverage." *Id.*, slip op. at 4. The Court recognized that OPM's September 11, 1981, Preliminary Analysis was too "unfocused" and ambiguous to provide a concrete foundation for judicial review of OPM's decision-making process. Accordingly, the Court concluded that it would be essential for OPM, "if it wishes to prevail on the merits" to provide a "more adequate explanation for its decisions." *Id.*, slip op. at 5.

OPM provided that explanation on March 5, 1982, in the form of an affidavit by Kevin J. Burns, Assistant Director for Insurance Programs at OPM. Mr. Burns' affidavit indicates that a number of factors motivated OPM's decision to accept the levels of mental health benefits proposed by BC.

1. The *Roe* plaintiffs did not press their equal protection claim in the Court of Appeals.

First, OPM found it "significant" that the "vast majority" of persons using mental health benefits would require less coverage than that provided for by BC, and therefore, the BC proposal would achieve the FEHBA policy of insuring against catastrophic illness. *Burns Aff.* at ¶ 10. Second, Mr. Burns indicates that OPM was concerned with the high cost of mental health benefits relative to the cost of other types of services; such costly coverage was seen as conflicting with OPM's statutory goal of attaining the maximum health benefits at the lowest possible cost to federal employees. *Id.*, at ¶ 11. Third, and related to the preceding rationale, OPM felt that the disparity in payments made and benefits received by mental health users amounted to a partial subsidy by physical benefit users of mental benefit users. *Id.*, at ¶ 13. The level of mental health benefits suggested by BC would render premiums paid for those benefits roughly equal to claims paid for them, and, therefore, would bring physical and mental benefit users into rough parity. *Id.*

Fourth, OPM found it material that, according to representations made by BC and independently corroborated by OPM staff, the levels of benefits proposed by BC were generally superior to those offered by private sector employers. *Id.*, at ¶ 11. Finally, OPM was "well aware" of BC's concerns that unlimited coverage for mental illness caused adverse selection, and agreed on a 1982 contract that could "avoid, to the extent possible, the loss of subscribers who are good risks." *Id.* at ¶ 15.

Defendants' motions contend that the only challenge of *any* force to the mental health benefit reductions, that OPM abused its discretion, has been completely devitalized by the Burns affidavit. In the precise format envisioned by the Court of Appeals, OPM has explained the reasoning process which underlay its decision to accept the mental benefit levels at issue. Since that reasoning process was fully consistent with the policy goals embodied in the FEHBA, including those specific to section 8904, this court has no choice but to uphold the legality of the cutbacks.

Plaintiffs' motions also focus upon whether OPM was arbitrary or capricious but plaintiffs vigorously dispute defendants' characterization of the Burns affidavit. Plaintiffs and *amicus curiae* American Federation of Government Employees[2] contemplated more than a conclusory statement of justifications for OPM's decision. Rather, the Court instructed OPM to provide a highly specific description of the alternatives OPM considered before singling out mental health benefits as the only element of catastrophic coverage to be significantly devalued. Since the Burns affidavit was deficient in this and other respects, OPM has failed to demonstrate its decision was rationally based; plaintiffs are, therefore, presently entitled to judgment.

In the alternative, plaintiffs maintain that there are genuine issues of material fact precluding the court from granting defendants' motions for summary judgment. The Burns affidavit is based upon numerous factual assumptions which are contradicted by plaintiffs or will be if discovery is permitted to proceed.

Finally, while plaintiffs do not seek judgment with respect to certain other claims in their complaints, they argue that judgment for defendants as to these claims would be premature. Specifically, plaintiffs maintain that discovery with regard to OPM's intent in accepting the cutbacks is crucial to a resolution of plaintiffs' Rehabilitation Act and equal protection claims.[3]

## II. *Discussion*

### A. *Section 706(2)(A) of the Administrative Procedure Act*

In the wake of the Court of Appeals' decision rejecting plaintiffs' request for

2. Pursuant to the Court of Appeals' suggestion, this court invited "appropriate" employee organizations to participate in the case and state their views. *Roe, Doe v. Devine, supra,* slip op. at 4. AFGE decided to participate in an *amicus curiae* capacity.

3. Apparently, plaintiffs have abandoned the claim, formerly made, that the cutbacks transgress the substantive requirements of section 8904.

preliminary relief, the principal substantive question before this court is whether OPM was arbitrary or capricious, or abused its discretion, in agreeing to the mental health benefit reductions proposed by BC. More precisely stated, the issue is whether OPM has, in a manner consistent with the Court of Appeals' directives and prevailing legal principles, demonstrated that the level of mental health benefits in the 1982 BC plan was reasonably based upon policy considerations permeating the FEHBA.

OPM's decision to accept the benefit reductions in controversy is undoubtedly subject to review for whether it was arbitrary or capricious or constituted an abuse of discretion. *See National Treasury Employees Union (NTEU) v. Campbell*, 589 F.2d 669 (D.C.Cir.1978); *American Federation of Government Employees (AFGE) v. Devine*, 525 F.Supp. 250, 252 (D.D.C.1981). No "statutes preclude judicial review," and, since there is law to apply under sections 8902 and 8904 of the FEHBA, OPM's action is not "wholly committed to agency discretion. . . ." 5 U.S.C. § 701(a).

■ In order to determine whether an agency has acted in an arbitrary or capricious fashion, a reviewing court must consider whether the agency decision "was based upon a consideration of the relevant factors and whether there has been a clear error in judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). While the court must carefully scrutinize the facts material to a particular decision, "the ultimate standard of review is a narrow one." *Id.; see Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974).

■ When considering OPM's procurement decisions under the FEHBA, judicial review is even more limited. Since OPM is granted "considerable latitude" in contracting for health benefits, *National Federation of Federal Employees (NFFE) v. Devine*, 679 F.2d 907, at 912 (D.C.Cir.1981), the court's review is "quite narrow." *NTEU v. Campbell, supra*, 589 F.2d at 678. The court is restricted to determining whether OPM has acted "in a manner consistent with the underlying purposes of the Act." *NFFE v. Devine, supra*, at 912. *See also Kentron Hawaii Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir.1973).

It is apparent that OPM's decision to accept the mental benefit reductions is consistent with several purposes underlying the FEHBA. One important policy objective is the minimization of programmatic cost to the government. *See NFFE v. Devine, supra*, at 912; *AFGE v. Campbell*, No. 80–2751 (D.D.C. Nov. 26, 1980), *aff'd sub nom. AFGE v. Devine*, 672 F.2d 892 (D.C.Cir. 1981); H.R.Rep.No.957, 86th Cong., 1st Sess. 4 (1959). The benefit reductions involved here are obviously in conformity with this purpose, as they will decrease the overall expense of program participation. The initial impetus for the cutbacks, in fact, was the government's determination to hold down spending in the federal health insurance area. *Burns Aff.* at ¶¶ 3–8.

Another important objective of the FEHBA is to ensure that federal employees receive maximum benefits at the lowest possible cost to themselves. *NFFE v. Devine, supra*, at 914; H.R.Rep.No.957, 86th Cong., 1st Sess. 4 (1959). The reduction in mental benefits is in harmony with this policy goal as well. First, it is undisputed that mental health coverage is quite expensive in relation to the number of persons benefitting from such coverage. *Burns Aff.* at ¶ 11. In 1981, the claims made for mental health benefits substantially exceeded premiums paid by recipients of these benefits; in contrast, payments by physical health beneficiaries have historically been equivalent to claims made by these subscribers. *Burns Aff.* at ¶ 11.

Thus, reducing 1982 mental benefits could rationally be viewed as one means to ensure the greatest level of overall health services at the lowest possible cost to federal employees. The cutbacks will allow BC to minimize the expense of plan participation for all employees by curtailing a bene-

fit of little value to most enrollees.[4] Furthermore, the cutbacks could rationally be viewed as a device for preventing physical benefit claimants and other beneficiaries of the program from "subsidizing" the costs of mentally ill persons. Benefit reductions designed to create a situation of rough equilibrium between all beneficiaries are consistent with the interests of program participants in keeping costs commensurate with derived benefits.

Second, OPM was cognizant of BC's concern that the phenomenon of adverse selection was causally related to unrestricted coverage for the treatment of mental illness and the final BC plan was structured so as to allay this concern. *Burns Aff.* at ¶ 15. To the extent that OPM accepted the mental health benefit reductions in order to ensure BC's continued participation in the FEHB program, OPM's decision was in accordance with the interests of all BC beneficiaries. The risk that BC would otherwise withdraw from the FEHB program threatened the integrity of the entire federal health insurance system and conflicted with the interests of all federal employees in securing low cost, comprehensive insurance.[5]

There is one final purpose of the FEHBA, embodied in section 8904, that is pertinent to review of OPM's decision; this is the objective of protecting federal employees against the high and unpredictable costs of catastrophic illness. *NFFE v. Devine, su-*pra, at 913 n.9, citing *AFGE v. Devine,* 525 F.Supp. 250, at 252 (D.D.C.1981); H.R.Rep. No.957, 86th Cong., 1st Sess. 1–2 (1959). The Court of Appeals, in ordering OPM to articulate its reasoning process, was principally interested in OPM's explanation as to how its decision incorporated the policy objectives "represented by the 'catastrophic' benefit provisions included in section 8904." *Roe, Doe v. Devine, supra,* slip op. at 4.

OPM insists that it did not ignore the policy of protecting persons against the costs of catastrophic illness, but conscientiously took this goal into consideration when assessing BC's proposal. In this regard, OPM found it "significant" that the 1982 levels of mental health benefits would completely cover the "vast majority" of persons using such benefits, i.e., approximately 90% of patients hospitalized for nervous or mental conditions were released within sixty days and approximately 88% of patients receiving outpatient care required 50 or fewer visits in a particular year. *Burns Aff.* at ¶ 10. OPM concluded that such high levels of coverage effectuated the purposes of section 8904. *Id.*

██ Thus, OPM's ultimate decision to accept BC's proposal was based, in part, on the judgment that the proposal would not unduly compromise the legislative purposes underlying section 8904. While the benefit reductions may not have affirmatively *furthered* the policy of insuring against catastrophic illness, OPM ascertained that the

---

**4.** This result is particularly pertinent in view of the alternative initially offered by OPM for achieving cost reductions in the BC plan. The major changes proposed by OPM on August 21, 1981, were to decrease the deductible on supplemental benefits to $200 per individual and to reduce the coinsurance rate to 75% on supplemental benefits. *Burns Aff.* at ¶ 4. It was reasonable for OPM to conclude that such changes could adversely affect a larger percentage of plan participants than the mental benefit cuts adopted.

**5.** Plaintiffs' contention that the record does not bear out BC's concern about adverse selection misses the point. As the Burns Affidavit makes clear, the critical factor for OPM was not so much whether adverse selection was actually generated by unlimited mental health benefits, but whether BC genuinely believed this to be the case. There is no dispute that BC was quite concerned that 1981 levels of mental health benefits would pose a threat to the plan's future stability and, therefore, to its participation in the FEHB program. Thus, OPM could rationally conclude that the interests of all federal employees would be served by accepting BC's proposed reductions, independent of the objective need for those reductions.

In addition, plaintiffs' own insurance expert does not controvert BC's factual representation regarding adverse selection. Mr. Vehec merely concludes that the BC plan has not experienced adverse selection "only as a result of mental health benefits." *Vehec Aff.* at ¶ 15. This, of course, suggests that part of the adverse selection problem did result from mental health benefits and substantiates BC's concerns.

cutbacks would not significantly interfere with this policy. It was not irrational for OPM to accept a minor imposition on one of the FEHBA's purposes, in order to substantially further other, equally valid statutory goals. Accordingly, it appears that OPM's decision followed a reasoned assessment of all the relevant purposes underlying the FEHBA, including those unique to section 8904, and this decision was not clearly erroneous. As such, it seems that the decision was not arbitrary or capricious and did not constitute an abuse of discretion.

Plaintiffs challenge this conclusion as inconsistent with the Court of Appeals' opinion in three respects. First, plaintiffs argue that OPM has not adequately demonstrated how its ultimate decision effectuates the purpose of section 8904, as required by the Court of Appeals. Even accepting OPM's statistics, plaintiffs contend, over 10% of all persons using mental health benefits will not be adequately covered by the 50 outpatient visits and 60 inpatient days provided for in the 1982 plan. These persons will not be protected against the staggering costs of catastrophic mental illness and, therefore, the purpose of section 8904 has been overtly disregarded.

The defect in this argument is that it assumes that OPM is required to provide complete coverage against costs associated with catastrophic mental illness. Plaintiffs no longer explicitly maintain that section 8904 mandates a particular level of catastrophic illness benefits, but have imported that identical theory into their challenge under the APA. In essence, plaintiffs contend that OPM's failure to ensure "last dollar" coverage for *all* costs associated with catastrophic illness is *per se* arbitrary and capricious. This is an unacceptable proposition. Plaintiffs would have the court designate a decision as arbitrary or capricious because it does not further one statutory purpose to the maximum extent feasible and to the exclusion of all other purposes. Judicial review under section 706(2)(A) of the APA, however, is not designed to ascertain whether an agency has made the best conceivable decision according to a single isolated criterion. Rather the court's role is the "quite narrow" one of determining whether the agency has *considered* all the pertinent factors and made a final decision that is not clearly erroneous. OPM considered the impact BC's proposal would have on coverage for catastrophic mental illness and concluded that the proposal would not excessively restrict that coverage. The court cannot conclude that OPM's failure to guarantee last dollar coverage for catastrophic mental illness evidences OPM's apathy towards the interests served by section 8904. Nor can the court conclude that OPM's final decision was clearly erroneous because it did not exalt the policies embodied in section 8904 over other policy goals of equivalent relevance and importance.

Plaintiffs' second argument is based on the statement in the Court of Appeals' opinion that "OPM has not provided a detailed explanation for why it was willing to accept the particular package of benefits proposed by Blue Cross/Blue Shield rather than requiring a package of benefits with the same overall financial cost but with less serious consequences on one category of 'catastrophic' coverage." *Roe, Doe v. Devine, supra,* slip op. at 4. According to plaintiffs, OPM still has not explained why it accepted cutbacks for one particular type of catastrophic illness, rather than demanding a more equitable method for trimming plan costs. In particular, OPM has not, according to plaintiffs, clarified why it did not require comparable reductions for selected categories of physical benefits.

In the court's view, the Burns affidavit cures the deficiency that troubled the Court of Appeals. OPM has isolated several factors which justified selecting out mental health benefits for special treatment. OPM was convinced that such benefits are especially expensive in proportion to the number of subscribers relying upon them; thus, the cost savings sought by the government could be attained without forfeiting a service of widespread appeal and importance to plan members and without increasing across-the-board expenses for plan participation. Plaintiffs insist that the same ra-

tionale could be used to justify cutbacks in particular categories of physical benefits but offer no specific evidence to support this assumption. The fact that persons suffering from illnesses will invariably use a disproportionate amount of plan resources, *Vehec Aff.* at ¶¶ 7–10, does not undercut OPM's finding that mental benefits are unusually expensive. Plaintiffs have not adduced evidence indicating that coverage is comparatively expensive for persons suffering from discrete physical disorders.

Moreover, plaintiffs do not dispute OPM's finding that cumulative claims made to mental benefit users greatly exceeded premiums paid by these subscribers in 1981, while claims made and premiums paid by physical benefit users were basically equal. Paring down physical health benefits could only exacerbate the inequality between mental benefit users and physical benefit users. Conversely, reducing mental benefits was the only reasonable way, consistent with OPM's general budgetary constraints, to place physical and mental benefit users in rough equilibrium.

The other major reason for concentrating cutbacks in the area of mental health benefits was to allay BC's concerns regarding adverse selection. Plaintiffs do not dispute that BC harbored grave doubts about the integrity of the plan if unlimited mental health benefits continued to be offered. Even if BC was particularly sensitive to the relationship between mental benefits and adverse selection,[6] it was not irrational for OPM to secure BC's continued participation in the FEHB program by alleviating BC's uncertainties.

Thus, it appears that OPM furnished legitimate, supportable reasons for allowing BC to concentrate cutbacks in the mental health benefit component of the plan, rather than compelling BC to implement an alternative "package of benefits with the same overall financial cost." This is all that was mandated by the Court of Appeals and all that is required by section 706 of the APA.[7]

The third and final criticism of OPM's explanation for its decision is based upon the statement in the Court of Appeal's decision that "OPM has not adequately explained the implication in the 'Preliminary Analysis' that reducing mental health coverage would be one way of insuring that 'no individual ... suffer disproportionately' from the overall cuts required by OPM's budget constraints." *Roe, Doe v. Devine, supra,* slip op. at 5. Plaintiffs contend that the Burns affidavit still does not explain the implication in the Preliminary Analysis and, therefore, OPM's decision is arbitrary or capricious.

Plaintiffs' argument is based on a misreading of the Court of Appeal's opinion. The Court was simply explaining why the Preliminary Analysis could not serve as the articulation of OPM's decisionmaking process; the Analysis was simply too conclusory and ambiguous. The Court of Appeals was not imposing on OPM the affirmative obligation of evidencing that the mental health benefit reductions insured that "no individual ... suffer disproportionately,"[8] but

---

**6.** Of course, plaintiffs' own expert concedes that some of the adverse selection suffered by BC resulted from high levels of mental health benefits. *See* n. 4, *supra.* Thus, it is undisputed that there was an objective, factual foundation for taking BC's concerns about adverse selection into account in arriving at a final decision.

**7.** Contrary to plaintiffs' apparent assumption, OPM is not required to demonstrate that it considered all imaginable options for reducing costs, or even the options specifically favored by plaintiffs, before agreeing to BC's proposal. OPM is only required to document that the option it did select had a rational basis in law and fact. *AFGE v. Campbell, supra,* slip op. at

6; *see generally, Bowman Transportation, Inc. v. Arkansas-Best Freight System,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974); *NRDC v. United States Nuclear Regulatory Commission,* 685 F.2d 459 at 493–494 (D.C. Cir. 1982). OPM has met this burden.

**8.** Such an *affirmative obligation would be en*tirely inconsistent with the discretion vested in OPM to bargain for particular, appropriate levels of health benefits. 5 U.S.C. § 8902(d); S.Rep.No.468, 86th Cong., 1st Sess. 3 (1959). OPM is obviously not precluded from agreeing to any benefit reductions that may disadvantage some individuals more than others, as long as this decision is not arbitrary or capricious.

was simply instructing OPM to furnish some supplemental, targeted explanation for the decision to accept BC's proposal. Since OPM has now proffered a specific explanation of the actual factors motivating the decision at issue, it is irrelevant whether OPM can clarify a vague implication in the earlier Preliminary Analysis.

Overall, plaintiffs have not succeeded in demonstrating that the Burns affidavit fails to comply with the mandate of the Court of Appeals. The affidavit explains, in sufficient detail, the various considerations underlying OPM's decision to accept BC's proposal. Those considerations included all the policy goals which are discernible in the FEHBA, including those embodied in section 8904. OPM's ultimate decision reflected a rational balancing of conflicting statutory purposes that the court cannot label "clearly erroneous." Accordingly, the court concludes that OPM was not arbitrary or capricious in accepting the 1982 mental health benefits proposed by BC.[9]

### B. Rehabilitation Act and Equal Protection Claims

Defendants contend that they are entitled to summary judgment as to plaintiffs' Rehabilitation Act and equal protection claims and the court concurs.

■ There are several substantial flaws in plaintiffs' ·equal protection argument. First, the equal protection prescription incorporated in the Fifth Amendment only prohibits purposeful discrimination. *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296,

60 L.Ed.2d 870 (1979). The limitation on mental health benefits that is at issue is facially neutral; it does not create an inherently invidious classification of persons. See *Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074, 1080, 1081, 67 L.Ed.2d 186 (1981); *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (the mere exclusion of pregnancy from a disability plan providing general coverage is "not a gender based discrimination at all"). Since plaintiffs have proffered no evidence suggesting that the reductions in question were undertaken with covert discriminatory intent, the equal protection challenge suffers from a fatal threshold deficiency.

■ Second, even if the benefit reductions are constitutionally reviewable they need only pass muster under the rational basis test. The limitations do not impinge on fundamental rights, *Schweiker v. Wilson, supra,* 450 U.S. at 230, 101 S.Ct. at 1080 (1981), nor do they implicate the interests of a "suspect class." Contrary to the criteria enumerated for such classes, federal employees receiving mental health benefits are not a "discrete and insular group," *United States v. Carolene Products Co.,* 304 U.S. 144, 152–53 n.4, 58 S.Ct. 778, 783–84 n.4, 82 L.Ed. 1234 (1938), endowed with particular immutable characteristics. See *Doe v. Colautti,* 454 F.Supp. 621, 631–32, aff'd 592 F.2d 704, 710 (3rd Cir. 1979).[10]

■ The defendant has certainly articulated a rational basis for the controversial cutbacks, particularly in view of the "strong presumption of constitutionality" accorded

---

**9.** In opposing defendants' motion for summary judgment, plaintiffs also contend that there are genuine issues of material fact which prevent the court from granting summary judgment for defendants on plaintiffs' APA claims. The court disagrees. It is axiomatic that review of agency action or inaction is limited to the record before the agency at the time the decision was made. *See Citizens to Preserve Overton Park, Inc. v. Volpe, supra,* 401 U.S. at 402, 91 S.Ct. at 814, 28 L.Ed.2d at 136; *Bradley v. Weinberger,* 483 F.2d 410, 413 (1st Cir. 1973); *Texas v. EPA,* 499 F.2d 289, 297 (5th Cir. 1974). The plaintiffs have not demonstrated that there is any dispute as to the record before OPM at the time it decided to accept BC's proposal.

The real dispute in this case is essentially a legal one: whether OPM could rationally conclude on the basis of the record before it that accepting BC's proposal was consistent with the purposes of the FEHBA. The court has resolved this legal dispute in defendants' favor and no purpose would be served by prolonging the matter.

**10.** Plaintiff Roe has as much as acknowledged this in his brief by stating that "the need for mental health services is *the defining characteristic* of" the persons affected by the benefit limitations. Plaintiff's Motion for Preliminary Injunction, at 14 (Emphasis added).

to legislative and administrative disbursements of monetary benefits. *Mathews v. Decastro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976). The defendants have offered the completely neutral rationale of reducing health care costs to the government, *Geduldig v. Aiello*, 417 U.S. 484, 496, 94 S.Ct. 2485, 2491, 41 L.Ed.2d 256 (1974) (minimizing costs is "an objective and wholly noninvidious basis for the state's decision not to create a more comprehensive insurance program than it has here"), as well as the importance of preserving the integrity of the entire federal health insurance program by minimizing the impact of the adverse selection phenomenon. *See, e.g., Califano v. Boles*, 443 U.S. 282, 296, 99 S.Ct. 2767, 2775, 61 L.Ed.2d 541 (1979); *Califano v. Jobst*, 434 U.S. 47, 53, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1977). Finally, the defendants have stressed that the benefit reductions in question will leave physically ill and mentally ill persons in rough parity with respect to projected per capita outlays. This suggests not only that a rational basis existed for the limitations on mental health benefits, but that a discriminatory classification is not even involved in the first instance.

■ Section 504 of the Rehabilitation Act provides, in pertinent part:

No otherwise handicapped individual in the United States shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency....

The most reasonable interpretation of this provision is that it disallows a federal agency from withholding from a handicapped individual a benefit that is made available to others. *Doe v. Colautti, supra*, 454 F.Supp. at 629. The alternative interpretation urged by the plaintiffs, that provision of a benefit to ameliorate one harm triggers the requirement to furnish equivalent benefits to all handicapped persons, is neither sensible nor supported by the legislative history of section 504. *Id.* at 454.

■ Applying the reasonable interpretation of section 504 to the cutbacks at issue necessitates a finding that they are legally valid. *All* benefits offered under the BC contract will be made available to both physically and mentally ill persons. No mentally incapacitated persons will be denied benefits or participation in the program "solely by reason" of their handicaps. Once again, the program will restore physically and mentally ill persons to relative equivalency in terms of actual resource expenditures. Thus, there can be no genuine contention that the cutbacks at issue "discriminate" against mentally diseased persons solely by virtue of their handicaps.

Plaintiffs maintain that there are genuine issues of material fact which preclude the granting of summary judgment as to these claims. Specifically, plaintiffs maintain that additional discovery is necessary to ascertain OPM's intent at the time it decided to accept BC's proposal. The court concludes that such discovery is not warranted. OPM has, in the precise manner demanded by the Court of Appeals, described the reasons for its decision to authorize the mental health benefit reductions. Plaintiffs have adduced no evidence tending to imply that these reasons were pretextual for covert discriminatory intent, and have not explained why discovery will be likely to produce such evidence. Moreover, as explained previously, there are several fatal legal flaws in plaintiffs' Rehabilitation Act and equal protection challenges, completely independent of any questions concerning OPM's state of mind.[11] Finally, the court has been directed by the Court of Appeals to decide this matter expeditiously, so that federal employees considering their health insurance options can proceed knowledgeably and confidently. *Roe, Doe v. Devine,*

11. With respect to plaintiffs' equal protection challenge, it is clear that there is at least a rational basis for the cutbacks in controversy. With regard to plaintiffs' claim under section 504 of the Rehabilitation Act, mentally incapacitated persons have not been denied participation in the FEHB program "solely by reason" of their handicaps.

*supra*, slip op. at 5. It would be inconsistent with this mandate to postpone final resolution of this controversy so plaintiffs can undertake a fishing expedition into the mental state of OPM decisionmakers. Accordingly, defendants' motions for summary judgment as to plaintiffs' Rehabilitation Act and equal protection claims are granted.

### III. *Conclusion*

The central issue in this case is whether OPM was arbitrary or capricious in accepting BC's proposal to reduce mental health benefits instead of insisting on alternative ways to achieve desired cost savings. Careful scrutiny of the Burns affidavit submitted by OPM and the "record as a whole," *NFFE v. Devine, supra,* at 914, convinces the court that OPM did not abuse its wide discretion in negotiating for federal health insurance benefits, but, rather, based its final decision on a reasoned assessment and balancing of all the purposes underlying the FEHBA. The government adopted the mental health benefit limitations in the Blue Cross/Blue Shield contract not out of callousness for the expenses confronting employees using such benefits, but as a result of legitimate interests in achieving equitable reductions in program costs and in preserving the financial viability of the FEHBA program. Because plaintiff's other substantive challenges also lack merit, the court grants defendants' motions for summary judgment and dismisses these cases.

An appropriate Judgment preceded this Memorandum Opinion.