**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 11-1916

———————

JOSEPH ASKEW, Both individually and derivatively on
behalf of the general assembly of the Church of the Lord
Jesus Christ of the Apostolic Faith,
Appellant

v.

THE TRUSTEES OF THE GENERAL ASSEMBLY OF
THE CHURCH OF THE LORD JESUS CHRIST OF THE
APOSTOLIC FAITH INC., A Pennsylvania Not-For-Profit
Corporation; KENNETH SHELTON, Individually, and as
President of the Board of Trustees of the Trustees of the
General Assembly of the Church of the Lord Jesus Christ of
the Apostolic Faith, Inc.; JOHNCARLTON THOMAS;
JOHNNY RAY BROWN; ANTHONY LAMB; ALONZO
W. REAGAN; LEON BLIGEN; JAMES HENRY BROWN;
ERIK SHELTON, All individually, and as Trustees of the
Trustees of the General Assembly of the Church of the Lord
Jesus Christ of the Apostolic Faith, Inc.; DONNA
SHELTON; RUTH G. LIVINGSTON; MARY THOMAS,
and all Individually, and as constructive Trustees

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 09-cv-00015)
District Judge: Honorable Stewart R. Dalzell

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 27, 2012
_____

Before: AMBRO, CHAGARES, and HARDIMAN, <u>Circuit Judges</u>.

(Opinion Filed: June 28, 2012)

Willie Pollins, Esq.
Pollins Law Firm
1725 Spruce St.
Philadelphia, Pennsylvania 19103

Fincourt B. Shelton, Esq.
504 Main St.
Suite 100
Darby, Pennsylvania 19023
        <u>Counsel for Appellant Joseph Askew</u>

Danielle Banks, Esq.
Caitlin E. Oberst, Esq.
Stradley, Ronon, Stevens & Young LLP
2600 One Commerce Square
2005 Market St.
Philadelphia, Pennsylvania 19103

Michael K. Twersky, Esq.

Fox Rothschild LLP
2000 Market St.
20th Floor
Philadelphia, Pennsylvania 19103

Counsel for Appellees The Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.; Kenneth Shelton; JohnCarlton Thomas; Johnny Ray Brown; Anthony E. Lamb; Alonzo W. Reagan; Leon Bligen; James Henry Brown; Erik Shelton; Donna Shelton; Ruth G. Livingston; and Mary Thomas

_____

OPINION

_____

CHAGARES, Circuit Judge.

The First Amendment to the United States Constitution provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." We address whether these Religion Clauses of the First Amendment insulate from civil court review the decision by a church leader to terminate an individual's membership in a church.

The dispute stems from an internal schism in the Church of the Lord Jesus Christ of the Apostolic Faith ("the Church"). Appellant Joseph Askew associated with the dissident faction of the Church polity, leading the Bishop and leader of the majority faction, appellee Kenneth Shelton

3

("Bishop Shelton"), to terminate his membership in the Church. Asserting claims on behalf of himself as a church member and derivatively on behalf of the Church, Askew alleges that Bishop Shelton and officers of the affiliated Board of Trustees misappropriated church assets and breached their fiduciary duties to the Church.

We conclude that the non-entanglement principle embedded in the Religion Clauses shields Bishop Shelton's membership decisions from civil court review. Correctly applying this principle, the District Court deferred to Bishop Shelton's declaration that he terminated Askew's membership in the Church. Because Askew's nonmember status deprives him of standing to assert claims alleging harm to the Church, we will affirm the dismissal of the case.

I.

The Church of the Lord Jesus Christ of the Apostolic Faith was founded by Sherrod C. Johnson in 1919. In 1947, Johnson and several church elders established The Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. ("the Corporation"), a non-profit corporation set up to hold and manage the real property and assets of the Church in trust. Both the Church and the Corporation are headquartered in Philadelphia, Pennsylvania.

The Church, an unincorporated entity, is governed by its Rules and Bylaws, last amended in 1961. The Bylaws establish two officers of the Church: a General Overseer and a General Secretary. The General Overseer (also known as the Bishop) serves for life, while the General Secretary must be nominated annually by the General Overseer and elected

4

by the General Assembly of the Church. In the event of the death of the General Overseer, the General Secretary temporarily assumes his duties until the General Assembly meets to elect him or a successor as the new General Overseer. The General Assembly, a body comprised of members of the congregation, meets annually and votes on church business and governance matters. The Bylaws vest title to real and personal property of the Church in the Corporation.

The Corporation is governed by its Articles of Incorporation. The Articles make the General Overseer the President of the Corporation. They authorize the President to nominate trustees to the Corporation, who in turn must be elected annually by the General Assembly. They also restrict membership in the Corporation to the President and Board of Trustees.

S. McDowell Shelton succeeded Johnson as General Overseer in 1961. He died in 1991, prompting a crisis in succession. Three men, including Kenneth Shelton and Roddy Shelton, laid claim to the General Overseer position. Roddy Shelton was the General Secretary at the time and thus should have temporarily succeeded S. McDowell Shelton under the Bylaws. But many members of the Church disapproved of his leadership and preferred Kenneth Shelton. The faction loyal to Kenneth Shelton used threats and force to oust the faction loyal to Roddy Shelton from the Church in an acrimonious meeting held in early 1992. Both men held separate General Assemblies and were elected General Overseer by their respective followers. In the aftermath of the schism, the parties continued to battle their claim to authority over the Church and ownership of church assets in

Pennsylvania courts. Over a decade ago, Pennsylvania courts concluded that Kenneth Shelton was the rightful General Overseer of the Church. Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. v. Shelton, Nos. 92-1887, 94-0914, 94-3654, slip op. at 4 (Pa. Ct. Com. Pl. June 12, 2000), aff'd, Church of the Lord Jesus Christ of Apostolic Faith, Inc. v. Shelton, 773 A.2d 1290 (Table) (Pa. Commw. Ct. Apr. 10, 2001).

Askew was a member of the dissident faction loyal to Roddy Shelton. Since 1992, he has attended Roddy Shelton's church and other churches affiliated with the dissident faction. He does not accept Bishop Kenneth Shelton as the General Overseer of the Church. On multiple occasions since the schism, Bishop Shelton declared all followers of Roddy Shelton nonmembers of the Church. In August 2009, Bishop Shelton executed a sworn declaration stating that Askew and all others loyal to Roddy Shelton were removed from the Church in 1992 and have not been recognized as church members since that time.

II.

Askew initiated this suit in January 2009. Named as defendants are Bishop Shelton and several trustees of the Corporation. The Corporation is a nominal defendant. The complaint alleges that Bishop Shelton and the trustees misappropriated assets of the Corporation for their own personal use at the expense of the Church and its members. Askew also alleges that, since 1992, the Corporation's officers have not submitted annual financial statements of assets and liabilities to the Commonwealth, as required by

6

Pennsylvania's Nonprofit Corporation Law ("PNCL"), 15 Pa. Cons. Stat. § 5101 *et seq.*

The complaint asserts eight counts. Count 1 alleges that the defendants breached their fiduciary duties to the Church and its members. Count 2 alleges that the defendants breached their fiduciary duties to the Corporation. Count 3 seeks a declaration that the Articles of Incorporation are unlawful under the PNCL because they exclude Church members from membership in the Corporation. Count 4 seeks an injunction ordering the defendants to disclose the Corporation's annual financial statements. Count 5 seeks appointment of a custodian for the Corporation. Count 6 alleges unjust enrichment and seeks restitution of misappropriated assets. Count 7 alleges civil conspiracy. Count 8 seeks imposition of a constructive trust.

Contending that Askew lacked standing to assert the claims, the defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) standing challenge may attack the complaint facially or may attack the factual basis for standing. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial. The District Court granted the motion in part and denied it in part. It found that Askew had no standing to sue on behalf of the Corporation under the PNCL and therefore dismissed counts 2, 4, and 5, all of which alleged harm to the Corporation. Taking as true Askew's allegation that he was a member of the Church, the court denied the motion to dismiss as to counts 1, 3, and 6, all of which asserted claims on behalf of the Church. Because Askew's standing to assert those claims

7

depended on his status as a member of the Church, however, the court ordered the parties to engage in discovery on Askew's claim to membership.

The defendants filed a renewed motion to dismiss after a period of focused discovery. Again, they argued that Askew lacked standing to pursue the claims. The District Court treated this motion as a factual challenge to Askew's standing and therefore consulted depositions, affidavits, and other pertinent evidence. See CNA v. United States, 535 F.3d 132, 145 (3d Cir. 2008) (explaining that in evaluating a factual attack on subject matter jurisdiction, the District Court may make factual findings based on material beyond the pleadings); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, at 159-60 (3d ed. 2004). Applying the non-entanglement principle embedded in the Religion Clauses of the First Amendment, the District Court accepted as binding Bishop Shelton's August 2009 declaration that Askew is not a member of the Church. Accordingly, it held that Askew lacked standing and dismissed the remaining claims.[1] Askew timely appealed.[2]

---

[1] The District Court dismissed counts 7 and 8 on the basis that they depend on the viability of other claims. Askew does not challenge the dismissal of counts 7 and 8 in this appeal.

[2] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. "Our review of a District Court's denial of Article III standing is plenary." Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286, 291 (3d Cir. 2005).

III.

Askew, the party seeking to invoke federal court jurisdiction, shoulders the burden of establishing his standing to sue. Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009). To do so, he must demonstrate that he suffered a concrete and particularized injury-in-fact that is "actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (quotation marks omitted). That injury must be fairly traceable to the actions of the defendants and likely to be redressed by a favorable decision. Id. at 560-61.

Misappropriation of church assets could have caused Askew injury-in-fact, as an individual or derivatively, only if he is a member of the Church. The core dispute, then, is whether Askew is a church member. Askew contends that he is a lifelong member of the Church and remains a member today. The defendants respond that because the highest authority in the Church declared Askew a nonmember, he is not a member of the Church and has no standing to assert the claims. The decision to terminate Askew's membership, they maintain, is uncontestable because it is a matter of ecclesiastical doctrine not amenable to review by civil courts.

The First Amendment "severely circumscribes" the role that civil courts may play in resolving disputes touching on matters of faith. Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church, 393 U.S. 440, 449 (1969). Civil courts encroach on the autonomy of religious institutions when they inquire into ecclesiastical law and governance. The non-entanglement principle, anchored in First Amendment values, thus "requires that civil courts

9

defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization." Jones v. Wolf, 443 U.S. 595, 602 (1979); see also Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in N. Am., 344 U.S. 94, 115-17 (1952). In so doing, civil courts accept decisions of the highest religious decision-maker as binding fact, so long as those decisions are not tainted by fraud or collusion. Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 713 (1976); Gonzalez v. Roman Catholic Archbishop of Manila, 280 U.S. 1, 16 (1929).

These bedrock principles, recently reaffirmed by the Supreme Court, derive from both Religion Clauses of the First Amendment. Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC, 132 S. Ct. 694, 704-06 (2012). Civil court review of doctrinal matters inhibits free exercise of religion and usurps the power of religious authorities to resolve intrachurch matters purely of ecclesiastical concern. Id. at 706. And it improperly cloaks the State with authority to "intervene on behalf of groups espousing particular doctrinal beliefs." Milivojevich, 426 U.S. at 709; see also Hosanna-Tabor, 132 S. Ct. at 706. The Religion Clauses guard against such "government interference with . . . internal church decision[s] that affect[] the faith and mission of the church itself." Hosanna-Tabor, 132 S. Ct. at 707.

Still, the First Amendment does not remove from the purview of civil courts all controversies involving religious institutions. Jones, 443 U.S. at 602-03. When a church dispute turns on a question devoid of doctrinal implications, civil courts may employ neutral principles of law to adjudicate the controversy. Id.; Presbyterian Church, 393 U.S. at 449; Scotts African Union Methodist Protestant

10

Church v. Conference of African Union First Colored Methodist Protestant Church, 98 F.3d 78, 88-90 (3d Cir. 1996). Pennsylvania courts opt to apply neutral civil law principles whenever possible to resolve such cases. See, e.g., Presbytery of Beaver-Butler of the United Presbyterian Church in the U.S. v. Middlesex Presbyterian Church, 489 A.2d 1317, 1320-23 (Pa. 1985). Indeed, they did so over a decade ago in their ruling that Bishop Shelton occupies the office of General Overseer. See Trustees of the General Assembly, Nos. 92-1887, 94-0914, 94-3654, slip op. at 4.[3]

Whether the controversy over Askew's membership in the Church is an ecclesiastical question or whether it may be resolved by reference to neutral principles of law is a matter of sharp disagreement between the parties. The record indicates that, in this Church, the question of who is and is not a member depends in part on religious practice. Article XX of the Church Bylaws provides:

---

[3] Askew invites us to reconsider the Pennsylvania court's conclusion, reached by applying neutral principles of law, that Kenneth Shelton is the General Overseer of the Church. Askew Letter of Jan. 20, 2012, at 2-5. As Askew did not raise the argument in the District Court, it is waived. See In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 262 (3d Cir. 2009) ("Absent exceptional circumstances, this Court will not consider issues raised for the first time on appeal." (quotation marks and citation omitted)). We have no warrant to question the holding of the Pennsylvania court on a matter that was not raised until after all briefings had been submitted and that in any event may be barred by estoppel principles.

11

Qualifications and membership shall be judged by the following: (a) Tithe paying[;] (b) Life being consistent with the doctrine of The Church of the Lord Jesus Christ of the Apostolic standard[; and] (c) Regular attendance except when this is for the reason of long sickness or physical impossibilities; at such time the member is required to remain in contact with the General Overseer at regular intervals to explain reason of absence; as well as to one in charge of local assembly.

Appendix 59-60. The second requirement makes membership in the Church an ecclesiastical matter, for it conditions an individual's membership on living in conformity with "the doctrine of [t]he Church." Id. We know of no neutral principle of law that could assist in evaluating whether a member lives his or her life in a manner consistent with church doctrine.

The Bylaws also delegate to the General Overseer the power to determine membership status. They contemplate two pathways for excommunication. If a member "has been duly accused of an offense punishable by The Church, his status in The Church shall be determined solely by the General Overseer, until trial." Id. at 53. Alternatively, when the General Overseer deems "it necessary for the good of the Church," he may terminate an individual's membership "without accusation or trial." Id.

The General Overseer's authority to excommunicate members falls squarely within the realm of matters insulated from civil court review. As codified in its central governance

12

document, the Church entrusts the General Overseer with power to decide when it is in the best interest of the congregation to terminate an individual's membership. Determining when excommunication is "necessary for the good of the Church" undoubtedly involves a complex balancing of spiritual and pragmatic considerations, all properly left to the highest church authority, not civil courts. We are not competent to upset judgments made by the General Overseer in this doctrinally sensitive area, for there are no neutral principles of law that shed light on the membership composition necessary for the good of the Church. See Md. & Va. Eldership of the Churches of God v. Church of God at Sharpsburg, Inc., 396 U.S. 367, 370 (1970) (Brennan, J., concurring) (providing examples of neutral principles of law that may be used to adjudicate church property disputes without jeopardizing First Amendment values); Scotts African Union, 98 F.3d at 94-95 (emphasizing the fact-intensive inquiry involved in deciding if a dispute is one of church governance and doctrine or one that may be resolved by applying neutral principles of law).

Bishop Shelton, the General Overseer and the highest judicatory tribunal in the Church, testified that he declared Askew a nonmember on multiple occasions since 1992. Askew was, Bishop Shelton stated, a follower of Roddy Shelton. And, ostensibly for the good of the Church, he terminated the membership of all churchgoers loyal to Roddy Shelton in the wake of the schism. Consistent with the non-entanglement principle, we accept his pronouncement as conclusive. Any other approach would embroil this Court in a two-decade-long intra-Church battle central to its mission and spiritual identity.

13

Askew urges us to probe Bishop Shelton's decision because, he says, the Bishop did not comply with the procedures for excommunication prescribed by the Bylaws. In essence, he objects that the decision is arbitrary as applied to him. Controlling precedent forecloses his argument, for the Supreme Court held in 1976 that the First Amendment does not permit civil court review of the arbitrariness of ecclesiastical actions. Milivojevich, 426 U.S. at 713-20; accord Hosanna-Tabor, 132 S. Ct. at 705. Review of a church's compliance with its own rules and regulations in arriving at a decision, reasoned the Court, "would undermine the general rule that religious controversies are not the proper subject of civil court inquiry." Milivojevich, 426 U.S. at 713. This case well illustrates the point. We could not evaluate whether Askew was entitled to an accusation and trial or whether his termination was "necessary for the good of the Church" without delving into church teachings and making value judgments about what, in fact, is necessary for the good of the Church. The First Amendment shields religious institutions from this sort of intrusive inquiry irrespective of their compliance with internal excommunication procedures.

Askew also argues that Bishop Shelton's August 2009 declaration terminating his membership was a post hoc decision made for the impermissible purpose of divesting the District Court of jurisdiction. We disagree. A doctrinally grounded decision made during litigation to insulate questionable church actions from civil court review may indeed raise an inference of fraud or bad faith. See id. (explaining that the fraud or bad faith exception may apply "when church tribunals act in bad faith for secular purposes"). Under those circumstances, the integrity of the judicial system may outweigh First Amendment concerns such that a

14

civil court may inquire into the decision. But we find no basis for the inference here. Since 1992, Bishop Shelton has repeatedly declared all persons loyal to Roddy Shelton nonmembers of the Church. Askew admittedly associated with the minority faction led by Roddy Shelton. His membership in that class of individuals undercuts any inference that Bishop Shelton first declared him a nonmember in 2009 in order to thwart review by the District Court.

We therefore hold that Askew has no standing to assert claims alleging harm to the Church. Dismissal of counts 1, 3, and 6 — all claims asserted in Askew's capacity as a member of the Church — was proper.

IV.

The District Court dismissed counts 2, 4, and 5 because they allege harm to the Corporation, but Askew is not and has never been a member of the Corporation. The PNCL limits standing to assert derivative claims to members of non-profit corporations. 15 Pa. Cons. Stat. § 5782. Askew does not contest the District Court's finding that he was not a member of the Corporation, but rather maintains that a separate provision of the PNCL, 15 Pa. Cons. Stat. § 5793(a), extends to him standing to sue by virtue of his membership in the Church. Because Askew is not a member of the Church, his argument fails. The District Court correctly held that Askew lacks standing under the PNCL to assert claims alleging harm to the Corporation.

15

V.

For the reasons stated, we will affirm the judgment of the District Court.