John SMITH, Plaintiff,

v.

UNITED STATES OFFICE OF PERSONNEL MANAGE-MENT, Defendant.

Civil Action No. 2:13–cv–5235.

United States District Court, E.D. Pennsylvania.

Filed Feb. 26, 2014.

Gregory B. Heller, Young Ricchiuti Caldwell & Heller LLC, Philadelphia, PA, for Plaintiff.

Gregory B. David, Margaret L. Hutchinson, Mark J. Sherer, U.S. Attorney's Office, Philadelphia, PA, for Defendant.

## ORDER

LEGROME D. DAVIS, District Judge.

AND NOW, this 26th day of February 2014, upon consideration of Plaintiff's Complaint (Doc. No. 1), Defendant's Motion for a Protective Order Staying Discovery and to Quash Subpoena (Doc. No. 14), Plaintiff's responses thereto (Doc. Nos. 16 & 39), and Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 25), Plaintiff's response (Doc. No. 29), Defendant's reply (Doc. No. 32), and Plaintiff's sur-reply (Doc. No. 37), it is hereby ORDERED as follows:

1. Defendant's Motion to Dismiss (Doc. No. 25) is DENIED.

2. Defendant's Motion for a Protective Order Staying Discovery (Doc. No. 14) is GRANTED to the extent that the Clerk of Court is directed to remand this matter to OPM to evaluate Smith's claim for benefits in light of his contention that the Independence Blue Cross plan violates the law and to compile an administrative record related to its contract with Independence Blue Cross, including an explanation of its reasons for approving a plan that excludes residential treatment facilities. Defendant's motion is DENIED in all other respects.

3. The clerk of court is directed to close this matter for statistical purposes.

I. Background

 A. Statutory Background

■ Congress enacted the Federal Employee Health Benefits Act (FEHBA) in 1959 to provide federal employees with subsidized health insurance coverage. 5 U.S.C. §§ 8901–8914; *Empire Health-*

*choice Assur., Inc. v. McVeigh,* 547 U.S. 677, 682, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006). "The Act authorizes the Office of Personnel Management . . . to contract with private carriers to offer federal employees an array of health-care plans" through the Federal Employee Health Benefits Program (FEHBP). *Empire,* 547 U.S. at 682, 126 S.Ct. 2121 (citing 5 U.S.C. § 8902(a)). Under the statute, the U.S. Office of Personnel Management (OPM) has "broad authority" to administer the FEHBP. *Dyer v. Blue Cross & Blue Shield Ass'n, Inc.,* 848 F.2d 201, 203 (D.C.Cir.1988). "Each enrollee, as FEHBA directs, receives a statement of benefits conveying information about the Plan's coverage and conditions." *Empire,* 547 U.S. at 684, 126 S.Ct. 2121 (citing 5 U.S.C. § 8907(b)).

At issue in this case is the relationship between OPM's administration of the FEHBP and the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA). 42 U.S.C. § 300gg–26. The MHPAEA applies to health insurance plans that cover "both medical and surgical benefits" and "mental health or substance use disorder benefits." *Id.* § 300gg–26(a). Plans that cover both forms of benefits must ensure that:

> the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

*Id.* § 300gg–26(a)(3)(A)(ii). Treatment limitations include: "limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the

scope or duration of treatment." *Id.* § 300gg–26(a)(3)(B)(iii).

In April 2010, the Department of the Treasury, the Department of Labor, and the Department of Health and Human Services (the administering agencies) issued Interim Final Rules interpreting the MHPAEA; the regulations divide the types of treatment patients receive into six categories: (1) inpatient, in-network; (2) inpatient, out-of-network; (3) outpatient, in-network; (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. 45 C.F.R. § 146.136(c)(2)(ii)(A)(1)-(6) (2013). The regulations provide that "mental health or substance use disorder benefits must be provided in every classification in which medical/surgical benefits are provided." *Id.* § 146.136(c)(2)(ii)(A). "In determining the classification in which a particular benefit belongs, a plan (or health insurance issuer) must apply the same standards to medical/surgical benefits and to mental health or substance use disorder benefits." *Id.* Treatment limitations may be quantitative, for example, a limit of two visits, or nonquantitative, such as "[m]edical management standards limiting or excluding benefits based on medical necessity or medical appropriateness, or based on whether the treatment is experimental or investigative." *Id.* § 146.136(a), (c)(4)(ii).

After this suit was filed, the administering agencies issued Final Rules. 45 C.F.R. § 146.136 (2014). These rules became effective in January 2014 and "appl[y] to group health plans and health insurance issuers offering group health insurance coverage on the first day of the first plan year beginning on or after July 1, 2014." *Id.* § 146.136(i). The Final Rules are more comprehensive than the Interim Final Rules. Relevant for this case because of factual similarities, the Final Rules include the following example:

> Example 9.(i) Facts. A plan generally covers medically appropriate treatments. The plan automatically excludes coverage for inpatient substance use disorder treatment in any setting outside of a hospital (such as a freestanding or residential treatment center). For inpatient treatment outside of a hospital for other conditions (including freestanding or residential treatment centers prescribed for mental health conditions, as well as for medical/surgical conditions), the plan will provide coverage if the prescribing physician obtains authorization from the plan that the inpatient treatment is medically appropriate for the individual, based on clinically appropriate standards of care.
>
> (ii) Conclusion. In this Example 9, the plan violates the rules of this paragraph (c)(4). Although the same nonquantitative treatment limitation—medical appropriateness—is applied to both mental health and substance use disorder benefits and medical/surgical benefits, *the plan's unconditional exclusion of substance use disorder treatment in any setting outside of a hospital is not comparable to the conditional exclusion of inpatient treatment outside of a hospital for other conditions.*

45 C.F.R. § 146.136(c)(4)(iii) (emphasis added). This example, or one like it, was not included in the Interim Final Rules.[1]

### B. Factual Background [2]

Plaintiff John Smith (a pseudonym) is an employee of a federal agency; at the time

---

1. We do not reach whether this regulation is retroactive under *Levy v. Sterling Holding Co., LLC*, 544 F.3d 493, 506–09 (3d Cir.2008).

2. Unless otherwise noted, the facts, and reasonable inferences drawn therefrom, are taken from the Complaint. *PG Publ'g Co. v. Aichele*, 705 F.3d 91, 97 (3d Cir.2013). Page references reflect the page number assigned by ECF.

he filed the Complaint, he was on administrative leave from his job. (Doc. No. 1 (Compl.), at 7, 8.) Smith suffers from addiction. (*Id.* at 9.) On August 30, 2013, Malvern Institute, an inpatient, non-hospital addiction treatment facility, admitted Smith for detoxification. (*Id.*) Smith then transferred to Malvern's residential treatment program on September 5, 2013. (*Id.*) Smith's treatment in the residential treatment program was not authorized, and thus not paid for, by his health insurance carrier. (*Id.*) Smith's health insurance is provided by the FEHBP. (*Id.* at 5, 7.) Smith's health insurance, provided by Independence Blue Cross (IBC), does not cover residential treatment facilities, described in the plan brochure as facilities that "may include drug and alcohol treatment, confidence building, military-style discipline, and psychological counseling." (*Id.* at 8; Doc. No. 1–5, at 16.) The plan defines residential treatment facilities as "offer[ing] treatment for a variety of addiction, behavioral, and emotional problems." (Doc. No. 1–5, at 16.)

Before his transfer from the detoxification program to the residential treatment program, Smith's providers requested preauthorization from IBC's mental healthcare subcontractor, Magellan Behavioral Health (Magellan). (Compl. 8–9.) Magellan denied the request. (*Id.* at 9.) On September 5, 2013, Smith appealed to IBC and OPM simultaneously. (*Id.* at 9–10.) On November 8, 2013, OPM issued a final denial of Smith's request for treatment coverage.[3] (A.R. OPM00001–3.) In its letter, OPM upheld IBC's two reasons for denial of coverage: (1) the plan does not cover services billed by residential

treatment facilities, and (2) Malvern is not a preferred provider. (A.R. OPM00001–2.) In reaching its decision, OPM cited the plan brochure, which states that residential treatment facilities are not covered and that Smith's treatment must normally be provided by a preferred provider. (*Id.*) In response to Smith's argument that his plan violates the MHPAEA, OPM stated: "This issue is beyond the scope of the FEHB administrative disputed claims process, which is limited to OPM's review of a FEHB carrier's denial of a health insurance claim and issuance of a final decision as to whether the claim is payable under the terms of the applicable plan brochure." (A.R. OPM00002.) However, OPM went on to state that Smith's plan does not violate the MHPAEA because "[t]he Plan does not impose financial requirements or treatment limitations on covered mental health and substance abuse disorder benefits that are not imposed on covered medical/surgical benefits. Further, a plan exc[l]usion, like the one at issue here for services at residential treatment centers, is not a financial requirement or treatment limitation, and therefore in no way violates the MHPAEA." (*Id.*)

Smith brings this action against OPM to challenge its decisions (1) to deny him benefits for a residential addiction treatment program, and (2) to approve federal health insurance plans, including his own, that do not cover non-hospital residential addiction treatment facilities. Count I of the Complaint, challenging the denial of benefits, is brought under 5 C.F.R. § 890.107; count II challenges OPM's decision to enter into the allegedly unlawful

---

**3.** Smith exhausted his administrative remedies, as required under the FEHBA, *see* 5 C.F.R. § 890.105, because he appealed Independence Blue Cross's (IBC) denial to IBC and OPM; both appeals were denied, compl. 9–10 & Doc. No. 25, at 7 n. 1. Since OPM issued a final denial of Smith's appeal after

Smith filed suit, we refer to OPM's denial letter—a copy of which is contained in the administrative record—because it is an "undisputedly authentic document[ ]" that Smith's "claims are based upon." *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir.2010).

insurance contract, which is alleged to be "final agency action" under 5 U.S.C. § 706. (Compl. at 19–20.) Smith argues that his health insurance plan violates the MHPAEA because it excludes residential treatment facilities. (*Id.* at 13.) Specifically, Smith contends that the MHPAEA requires coverage for non-hospital addiction treatment at residential facilities because inpatient addiction treatment "encompasses two very different care settings: (a) care that is provided in an inpatient hospital setting (such as a general acute care hospital or a specialty hospital), and (b) care that is provided in an inpatient *non-hospital* setting." (*Id.*)

## II. Defendant's Motion to Dismiss

Defendant OPM moves to dismiss Smith's Complaint or, in the alternative, for summary judgment. The issues raised in the motions to limit discovery and to dismiss are intertwined; however, we address OPM's motion to dismiss first because it contains arguments that could be dispositive of whether discovery is necessary.

### A. Count I of the Complaint States a Claim upon Which Relief Can Be Granted

#### 1. Legal Standard [4]

A district court should grant a 12(b)(6) motion to dismiss "if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that 'the allegations in a complaint, however-

---

4. OPM does not pinpoint the governing legal standard beyond identifying Rules "12 and 56." (*See generally* Doc.·No. 25.) We construe OPM's motion to argue that Smith's first count (for denial of benefits) fails to state a claim upon which relief can be granted under Rule 12(b)(6), and Smith's second count (related to OPM's contracting authority) is outside this court's subject matter jurisdiction under Rule 12(b)(1). *In re Schering Plough*

---

er true, could not raise a claim of entitlement to relief[.]' " *Mariotti v. Mariotti Bldg. Prods., Inc.,* 714 F.3d 761, 764–65 (3d Cir.2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff must plead "sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.' " *Fleisher v. Standard Ins. Co.,* 679 F.3d 116, 120 (3d Cir.2012) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "[R]ote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements" should be disregarded by the court. *James v. City of Wilkes–Barre,* 700 F.3d 675, 679 (3d Cir.2012).

 Under the Administrative Procedure Act (APA), "we 'hold unlawful and set aside agency action, findings, and conclusions' that are found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.' " *CBS Corp. v. FCC,* 663 F.3d 122, 137 (3d Cir.2011) (quoting 5 U.S.C. § 706(2)(A)), *cert. denied,* —— U.S. ——, 132 S.Ct. 2677, 183 L.Ed.2d 712 (2012); *see also Nazareth Hosp. v. Sebelius,* 938 F.Supp.2d 521, 532 (E.D.Pa.2013); *Arrington v. Grp. Hospitalization & Med. Servs., Inc.,* 806 F.Supp. 287, 290–91 (D.D.C.1992) (reviewing OPM's denial of benefits); *NVE, Inc. v. Dep't of Health & Human Servs.,* 436 F.3d 182, 189 (3d Cir.2006) (stating that "the APA's standards for scope of review and discovery" apply when it is the mechanism by which the plaintiff brings his claim un-

---

*Corp. Intron/Temodar Consumer Class Action,* 678 F.3d 235, 243 (3d Cir.2012) (noting that standing is challenged under Rule 12(b)(1) standard); *see CNA v. United States,* 535 F.3d 132, 145 (3d Cir.2008) (holding that district court properly applied Rule 12(b)(1) standard when evaluating whether Federal Tort Claims Act's waiver of sovereign immunity had been satisfied).

less Congress intended to override the APA's standards in enacting the statute that the plaintiff alleges was violated). "An agency action may be arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.' " *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). "In determining whether any of those circumstances exist, we are conscious of our responsibility to 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.' " *Id.* (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, 103 S.Ct. 2856).

## 2. Analysis

OPM argues that "the Blue Cross Plan's benefits, exclusions, and limitations do not violate MHPAEA and the regulations" for four reasons. (Doc. No. 25, at 9–11.) We address each argument in turn.

■ First, OPM argues that the insurance plan does not violate the MHPAEA's "parity" requirement or "treatment limitation" prohibition. (*Id.* at 9.) Under the MHPAEA's parity requirement, "the treatment limitations applicable to … mental health or substance use disorder benefits [must be] no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan[.]" 42 U.S.C. § 300gg–26(a)(3)(A)(ii). OPM argues that the parity requirement is not violated because the MHPAEA " 'does not [r]equire a group health plan … to provide any mental health benefits or substance use disorder benefits' and does not 'affect the terms and conditions relating to the amount, duration or scope of mental health or substance use disorder benefits under the plan[.]' " (Doc. No. 25, at 9 (quoting 45 C.F.R. § 146.136(e)(3)(i)-(ii)).) However, OPM's argument misses the mark. Although OPM is correct that the MHPAEA does not require every health insurance plan to cover mental health benefits, the language OPM quotes is taken out of context because the Act *applies* to plans that do cover those benefits. Thus, OPM misses the broader point that the IBC plan, which does offer some mental health benefits, is subject to the MHPAEA's parity analysis. Absent a substantive argument from OPM that IBC's plan satisfies the parity analysis,[5] we decline to dismiss on this basis.[6]

5. For example, if the IBC plan did not cover any residential treatment facilities, including hospice (which is likely a medical benefit) and behavioral facilities (which are mental health benefits), the parity analysis would be more straightforward. However, the IBC plan does cover hospice care, Doc. No. 1–3, at 20, making it entirely unclear whether IBC's wholesale exclusion of residential facilities geared toward mental health services survives the MHPAEA's parity analysis. We do not express an opinion about whether the IBC plan violates the MHPAEA.

6. Given the record, we are not persuaded at this juncture by OPM's argument that its decision to deny benefits was not arbitrary and capricious because Malvern is not a preferred provider. (Doc. No. 25, at 9 n. 2.) Since IBC excluded all residential treatment facilities from a plan that requires preferred providers to provide treatment, it is unclear why any residential treatment facility would be a preferred provider. Thus, if the contract does violate the law, OPM and IBC placed a requirement on Smith that, in all practicality, it is unlikely he could have met.

Second, OPM argues that the MHPAEA is not violated by an exclusion of residential treatment facilities because such a conclusion would require a subclassification within the inpatient, in-network classification. (Doc. No. 25, at 10.) Specifically, OPM states: "A plan or issuer may be prudent to consider the efficacy of [residential] treatment, but MHPAEA imposes no requirement to offer such a specific benefit, provided that some benefits within the inpatient, in-network classification are offered, as Smith's Blue Cross Plan does." (*Id.*) Presumably, OPM is referencing the fact that Smith's insurance plan covers hospital-based drug treatment. (*See* Doc. No. 1–3, at 28.) Although, at first blush, this argument appears consistent with the regulations, offering "some benefits" is not a satisfactory standard by which to assess the lawfulness of insurance plans under the MHPAEA. The Act's text provides that (1) "the treatment limitations applicable to ... mental health or substance use disorder benefits [must be] no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan," and (2) "there [must be] no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." 42 U.S.C. § 300gg–26(a)(3)(A)(ii). Given the fact that the IBC plan covers hospice care, Doc. No. 1–3, at 20, it is unclear whether the plan's exclusion of residential treatment facilities is "more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan," or is a "separate treatment limitation[ ] that [is] applicable only with respect to mental health or substance use disorder benefits," 42 U.S.C. § 300gg–26(a)(3)(A)(ii).

Third, OPM contends that the MHPAEA's prohibition on treatment limitations is not violated because "the regula-

tions' definition of treatment limitation expressly eliminates exclusions from parity analysis." (Doc. No. 25, at 9 (citing 45 C.F.R. § 146.136(a)), 10.) However, the regulations do not go that far. The regulation defines treatment limitations as:

limits on benefits based on the frequency of treatment, number of visits, days of coverage, days in a waiting period, or other similar limits on the scope or duration of treatment. Treatment limitations include both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage. (See paragraph (c)(4)(ii) of this section for an illustrative list of nonquantitative treatment limitations.) *A permanent exclusion of all benefits for a particular condition or disorder, however, is not a treatment limitation for purposes of this definition.*

45 C.F.R. § 146.136(a) (emphasis added). OPM argues that the last sentence of this definition means that IBC's plan may lawfully exclude certain residential treatment facilities. (Doc. No. 25, at 9–10.) OPM's reading of the text is too broad. Instead of eliminating all "exclusions" from the definition of treatment limitation as OPM contends, the regulation eliminates "[a] permanent exclusion of all benefits for a particular condition or disorder." 45 C.F.R. § 146.136(a). We interpret "a particular condition or disorder" to mean a medical condition like anorexia nervosa or post-traumatic stress disorder; a residential treatment facility is not fairly categorized as a "condition or disorder." *See* Merriam–Webster Dictionary (condition), *available at* http://www.merriam-webster.com/dictionary/condition; Black's Law Dictionary (9th ed.2009) (disorder). Thus, we find this argument, which OPM relied on

when it denied Smith's appeal and reiterates here, to be unpersuasive.[7]

■ Fourth, OPM argues that the MHPAEA regulations do not require non-hospital residential treatment as part of a continuum of care. (Doc. No. 25, at 10–11.) We agree with this interpretation, given the administering agencies' recognition that the continuum of care for mental health benefits is not the same as the continuum of care for medical and surgical benefits, and their express decision not to reach that issue in the Interim Final Rules. Interim Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 75 Fed.Reg. 5410–01, at 5416–17 (Feb. 2, 2010) ("The Departments recognize that not all treatments or treatment settings for mental health conditions or substance use disorders correspond to those for medical/surgical conditions.... The Departments invite comments on whether and to what extent MHPAEA addresses the scope of services or continuum of care provided by a group health plan or health insurance coverage."). Although this argument is responsive to the Complaint, it is not a dispositive one that entitles OPM to dismissal of the Complaint. Thus, we deny OPM's motion to dismiss.[8]

### B. The Court Has Subject Matter Jurisdiction over Count II of the Complaint

#### 1. Legal Standard

■ A motion under Rule 12(b)(1) challenges whether the district court has properly subject matter jurisdiction over the claims. *See* Fed.R.Civ.P. 12(b)(1). Rule 12(b)(1) motions "may attack the complaint facially or may attack the factual basis for standing." *Askew v. Trustees of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc.*, 684 F.3d 413, 417 (3d Cir.2012), *cert. denied*, —— U.S. ——, 133 S.Ct. 947, 184 L.Ed.2d 728 (2013). In the absence of an Answer from the defendants or discovery, the district court may construe the challenge as facial. *Id.* "In reviewing a facial challenge, which contests the sufficiency of the pleadings, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir.2012) (quotation marks omitted). The district court applies the same familiar standard of review that is applied to a Rule 12(b)(6) motion to dismiss. *Id.* However, the plaintiff bears the burden of showing that the court has jurisdiction. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.2005). "With respect to 12(b)(1) motions in particular, '[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right.'" *In re Schering Plough*, 678 F.3d at 244 (quoting *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir.2007)).

---

**7.** We are not obligated to give OPM's interpretation of the MHPAEA deference because OPM is not charged with administering that statute. *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n. 9, 117 S.Ct. 1953, 138 L.Ed.2d 327 (1997); *Yong Wong Park v. Att'y Gen. of the U.S.*, 472 F.3d 66, 70–71 (3d Cir.2006).

**8.** Because we conclude in section III below that the administrative record is insufficient for us to evaluate the lawfulness of OPM's action, we decline to treat OPM's motion as a motion for summary judgment.

### 2. Analysis

#### a. Smith Has Standing to Sue

OPM argues that Smith is not within the "zone of interests" of the statute under which he brings his claim. (Doc. Nos. 25, at 16–19 & 32, at 7–8.) Smith responds that he is within the statute's zone of interests because his claim is based on his treatment at a residential treatment facility that the MHPAEA requires OPM and IBC plans to cover. (Doc. No. 29, at 24–25.) We find that Smith has standing to sue.

▮ "As interpreted by the Supreme Court, a person is adversely affected or aggrieved within the meaning of a relevant statute and hence has standing to sue under [§ ]10 if he alleges (1) that he has or will sustain some actual or threatened injury in fact resulting from the challenged agency action, and (2) that the alleged injury is to an interest arguably within the zone of interests to be protected or regulated by the statute in question." *Concerned Residents of Buck Hill Falls v. Grant*, 537 F.2d 29, 33 (3d Cir.1976) (quotation marks omitted). Here, we find that Smith is within the zone of interests of the MHPAEA and the FEHBA. Smith is a federal employee enrolled in a federal health insurance plan, and he suffers from addiction; these facts bring him within the zone of interests of the FEHBA, which concerns providing affordable healthcare to government employees, and the MHPAEA, which concerns parity in health insurance coverage. *See id.* (holding that residents that lived near areas affected by flood dangers had standing to sue under statute that preserves the nation's land and water resources); *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 154, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) ("Where statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action.").

#### b. Congress Has Waived Sovereign Immunity

▮ OPM contends that Smith's second count must fail because Congress has not waived sovereign immunity for the contract-based claim that Smith brings. (Doc. No. 25, at 12–16.) Specifically, OPM argues that the structure and intent of the FEHBA precludes judicial review of OPM's contracts with health insurance providers. (*Id.* at 13–16.) In response, Smith argues that OPM's contracting authority is reviewable because "OPM's actions here are not committed wholly to OPM's discretion, but rather are constrained and limited by the MHPAEA."[9] (Doc. No. 29, at 23.) We conclude that OPM has not met its heavy burden of showing that Congress intended for OPM's contracting actions to be beyond the scope of judicial review.

▮ The APA waives the United States' sovereign immunity, provides a cause of action, and grants a right of judi-

---

**9.** At the outset, we reject Smith's contention that this Court has jurisdiction under 5 U.S.C. § 8912. (Doc. No. 29, at 21–22.) As explained by the Supreme Court: "The purpose of [§ 8912]—evident from its reference to the Court of Federal Claims—was to carve out an exception to the statutory rule that claims brought against the United States and exceeding $10,000 must originate in the Court of Federal Claims." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 686, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006). In light of the Supreme Court's recent interpretation of this provision as an exception to the Court of Federal Claims' exclusive jurisdiction, we decline to give this statutory provision the broad reading that Smith advocates and that was adopted by the D.C. Circuit. *See Nat'l Treasury Emps. Union v. Campbell*, 589 F.2d 669, 674 (D.C.Cir.1978) ("[Section 8912] is ... a broad consent to all suits brought to enforce rights and obligations created by the Health Benefits Act.").

cial review to "any 'person suffering legal wrong because of agency action.'" [10] *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 189 (3d Cir.2006) (quoting 5 U.S.C. § 702). "Section 10 of the APA provides for judicial review of agency action 'except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.'" *Concerned Residents of Buck Hill Falls*, 537 F.2d at 34 (quoting 5 U.S.C. § 701(a)). The party advocating that judicial review is precluded "bears the heavy burden of demonstrating by 'clear and convincing evidence' that Congress intended to restrict access to the courts." *Id.* (quoting *Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975)). The clear and convincing standard is meant not in the strict evidentiary sense, but in the sense that "the presumption favoring judicial review [is] overcome ... whenever the congressional intent to preclude judicial review is fairly discernible in the statutory scheme." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) (quotation marks omitted). To assess whether Congress's intent to preclude judicial review is fairly discernible, we look to the statute's "express language, ... the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Id.* at 345, 104 S.Ct. 2450.

Here, we find that OPM has not carried its burden of showing that Congress intended to preclude judicial review.[11] OPM's main evidence of Congress's intent

is the FEHBA regulations, which OPM drafted. (Doc. No. 25, at 12–16.) OPM argues that it has "created a detailed administrative enforcement scheme for resolving disputes over FEHBA benefits." (*Id.* at 15.) We agree, but this regulatory scheme reflects OPM's choices, not necessarily a manifestation of congressional intent. *See Block*, 467 U.S. at 346–47, 104 S.Ct. 2450 (1984) (analyzing statutory scheme). The statute's express language does not reflect the narrow scheme that OPM implemented. *See generally* 5 U.S.C. §§ 8901–8914. And the nature of the administrative action involved does not show that Congress intended to preclude judicial review. *Compare Lone Pine Steering Comm. v. U.S. E.P.A.*, 777 F.2d 882, 885 (3d Cir.1985) ("In some instances, ... particularly when the public health is threatened, an administrative agency is permitted to act first and litigate later."). The action involved—OPM's contracting with plan providers—is amenable to judicial review. *Am. Fed'n of Gov't Emps., AFL–CIO v. Devine*, 525 F.Supp. 250, 252 (D.D.C.1981); *Doe v. Devine*, 703 F.2d 1319, 1326 (D.C.Cir.1983).

Further, we find evidence in the statute that suggests that Congress did not intend to preclude judicial review. The FEHBA provides: "A contract may not be made or a plan approved which excludes an individual because of race, sex, health status, or, at the time of the first opportunity to enroll, because of age." 5 U.S.C. § 8902(f). If OPM's stance were adopted, this provision would be a mere request by

---

**10.** We note that we have jurisdiction over this APA claim under 28 U.S.C. § 1331. *See Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 125 n. 11 (3d Cir.2012) (clarifying that the APA is not an implied grant of subject matter jurisdiction, but rather that § 1331 confers subject matter jurisdiction upon a district court reviewing a claim rooted in the APA).

**11.** In its reply, OPM argues for the first time that Smith is not entitled to attorney's fees because that relief is beyond the APA's waiver of sovereign immunity. (Doc. No. 32, at 4.) We do not reach this issue because the parties have not fully briefed it. However, we note that Smith does request "relief other than money damages" as required by 5 U.S.C. § 702. (*See* Compl. 22–23.)

Congress that OPM forego contracting with plan providers that create discriminatory plans without any threat that a plaintiff might sue if OPM did contract in a prohibited way. *See Block*, 467 U.S. at 348, 104 S.Ct. 2450 (finding it inconsistent to allow consumers to sue when they were not able to challenge agency action under statute's scheme while other parties were able to). The FEHBA's legislative history also counsels against finding that judicial review is precluded. Congress implemented the FEHBA to provide "a measure of protection for civilian government employees against the high, unbudgetable, and, therefore, financially burdensome costs of medical services through a comprehensive government-wide program of insurance for federal employees..., the costs of which will be shared by the government, as employer, and its employees." H.R.Rep. No. 86–957, at 1 (1959), *reprinted in* 1959 U.S.C.C.A.N. 2913, 2914. While the cases that OPM cites support the proposition that OPM does not have a fiduciary duty to FEHBP enrollees, *see, e.g., Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F.Supp. 37, 44 (D.D.C.1996), we find Congress's express concern for the welfare of federal employees supports our conclusion that Congress did not intend to preclude judicial review of OPM's actions. Thus, we deny OPM's motion to dismiss because we find that Congress has waived the United States' sovereign immunity.

### III. Defendant's Motion for a Protective Order Staying Discovery and to Quash Subpoena

■ OPM moves to stay all discovery in this matter unless the party seeking discovery receives leave of this Court. (Doc. No. 14.) We have previously resolved all but one of the issues presented in Defendant's motion, *see* Doc. No. 15, and the remaining issue is whether discovery without leave of court is proper in this matter. The parties agree that, under the APA, the district court should usually rely upon the record that was developed at the administrative level. (Doc. Nos. 14, at 7 & 39, at 1.) OPM cites case law stating that if the record is incomplete, remand to the administrative agency is usually appropriate; and it argues that the two exceptions that allow a court to look beyond the administrative record do not apply here. (Doc. No. 14, at 7–9.) Smith argues in response that discovery is needed to complete or supplement the record because there is no record related to count II.[12] (Doc. No. 39, at 1–3.) We conclude that remand of this matter is appropriate so that OPM can consider factors that it did not consider related to count I and so it can create an administrative record related to count II.

The Third Circuit and Supreme Court have provided guidance about whether and to what extent discovery at the trial court level is appropriate in APA cases:

"The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). If the record before the agency does not support the agency action, if the agency has not considered all relevant factors,

---

**12.** We conclude that Smith's argument that discovery related to whether Malvern is a participating or preferred provider, Doc. No. 39, at 3–5, is premature given that we are remanding this matter back to OPM.

or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

*Horizons Int'l, Inc. v. Baldrige,* 811 F.2d 154, 162 (3d Cir.1987) (quoting *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)) (parallel citations omitted).

Here, we find that remand of this case to OPM is appropriate. With regard to count I, OPM has not evaluated whether the IBC plan violates the law in a way that allows us to determine whether its decision was arbitrary or capricious. When passing on Smith's allegation that the IBC plan violates the MHPAEA, OPM stated that such allegations were beyond the scope of its review and gave a short explanation for why the IBC plan does not violate the MHPAEA. (A.R. OPM00002.) Thus, by only briefly evaluating whether the IBC plan violates the MHPAEA, OPM has not fully considered an important factor in whether benefits should be provided to Smith. *United States v. Rohm & Haas Co.,* 669 F.Supp. 672, 684 (D.N.J.1987). OPM should have the opportunity to engage in this analysis in the first instance, and it is better equipped to analyze the factual issues Smith's claim raises. *Horizons Int'l,* 811 F.2d at 162; *see Bridge v. U.S. Parole Comm'n,* 981 F.2d 97, 105 (3d Cir.1992) (discussing when agency should expand its record). Further, no administrative record exists related to count II. We decline to allow the parties to engage in discovery related to this count because OPM should have the opportunity to compile the administrative record in support of its position that its contract is not unlawful. *See Horizons Int'l,* 811 F.2d at 162–63 (holding that district court improperly expanded record); *Doe v. Devine,* 545 F.Supp. 576, 581 (D.D.C.1982) (noting that D.C. Circuit had "order[ed] OPM to articulate its reasoning process" related to contract that reduced mental health benefits for FEHBP enrollees), *aff'd,* 703 F.2d 1319 (D.C.Cir.1983). Thus, we conclude that OPM, with its expertise in health insurance coverage, will be in a better position than this Court to evaluate the legal and factual issues that Smith raises.

## IV. Conclusion

For the reasons stated above, we conclude that remand to OPM is appropriate. Remand will allow OPM to consider in more depth whether IBC's plan violates the MHPAEA, determine whether and how the MHPAEA affects Smith's appeal from the denial of benefits, and develop an administrative record related to count II of Smith's Complaint.