

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

SPIRIT & TRUTH CHURCH, et al.,     )     No. ED100421

    )

       Plaintiffs/Respondents,     )     Appeal from the Circuit Court

    )     of St. Louis County

vs.     )

    )     Hon. Richard C. Bresnahan

MARK BARNABY, et al.,     )

    )     Filed:

       Defendants/Appellants.     )     April 29, 2014

## Introduction

This is an appeal from the trial court's summary judgment declaring the status and positions of various members of the Spirit and Truth Church. Mark Barnaby, who was pastor and president of the Church's board of directors, purported to remove from membership in the Church the other two directors on the board, thereby disqualifying them from service on the board, and then appointed two new directors. The trial court concluded that those actions were void and of no force and effect. The court held that the ousted members retained their status as Church members and directors and that their subsequent removal of Barnaby as pastor and board president was valid. Barnaby and the directors he appointed appeal. We reverse.

## Background

The material facts are undisputed. The Spirit and Truth Church is a Missouri nonprofit corporation, Pentecostal church and daycare. Since 1994, Barnaby has been the

pastor and president of the Church's board of directors. In 2010, the board of directors consisted of Barnaby, his wife Tiffany Birch and John Hellman. Birch was also the vice-president and secretary.

Barnaby and Birch were in the process of divorcing in September of 2010. On October 2, 2010, Barnaby prepared a document titled "consent action," which provided that Birch, Hellman and other Church members violated provisions of the Church's bylaws and were, therefore, removed by the pastor as members of the Church. Barnaby cited to Article II, Section 4(l) of the Church's bylaws, dealing with member discipline. In the consent action, Barnaby also stated that removal from membership thereby disqualified Birch and Hellman from the board of directors under Article III, Section 2.2 of the bylaws. Barnaby went on in that document to appoint Vinessa D'Sa and Brock Hall to replace the disqualified directors, citing Article III, Section 5, which states that the board of directors shall be appointed by the pastor. The consent action was signed only by Barnaby. Barnaby thereafter replaced Hall with Richard Sarpong as a director.

Birch and Hellman maintained that they were still members of the Church and that they retained their positions on the board of directors. In January of 2011, Hellman called a meeting of Church members to vote on dismissal of Barnaby as pastor and director. At the meeting, Birch and Hellman, purportedly acting as the board of directors, voted to remove Barnaby, and the Church membership voted to approve that action. Birch and Hellman notified Barnaby of his removal. Barnaby continued to hold himself out as pastor and to assert that the board of directors consisted of himself, D'Sa and Sarpong, and did not include Birch and Hellman. Barnaby continued to handle the Church's money and maintained sole control over the Church's bank accounts.

2

Birch, Hellman and other members of the Church, individually and in the name of the Church (hereafter collectively "Respondents"), filed a petition against Barnaby, D'Sa and Sarpong (hereafter collectively "Appellants"). Respondents alleged that the Church's bylaws under which Barnaby issued the consent action were inconsistent with Missouri nonprofit law. In Count I, Respondents sought a declaration that Barnaby's attempt to remove them from membership in the Church was void; that Birch and Hellman were still directors; that Barnaby had been lawfully removed as pastor; and that D'Sa, Sarpong and anyone else he had appointed to the board were not bona fide directors. In Count II, Respondents sought an equitable accounting of Church finances, alleging that Barnaby mismanaged and misused Church funds. In turn, Appellants filed a counterclaim and, in the name of the Church, a cross-claim seeking the opposite declaration: that the consent action was valid under the bylaws and Missouri law; that Respondents were no longer members of the Church; that Barnaby was the pastor; and that he, D'Sa and Sarpong constituted the board of directors. The parties filed cross-motions for summary judgment, and the trial court granted Respondents' motion and denied Appellants' motion in part.[1] The court entered judgment finding that Barnaby's consent action was void, that Respondents were still members of the Church and that, as directors, they properly removed Barnaby as pastor.

As to the equitable accounting count, the trial court appointed a receiver and ordered Appellants to provide the receiver the Church's financial documents. The receivership was to remain in effect until the equitable accounting was completed and all funds were accounted for thereunder. Earlier in the case, the court had entered an order

---

[1] Appellants' motion for summary judgment on another counterclaim against Birch for misappropriation of funds was granted. That claim is not at issue on appeal. Other counterclaims were voluntarily dismissed.

3

prohibiting Barnaby from using Church funds to pay his personal attorney's fees. Respondents had filed a motion to hold Barnaby in contempt of that order, which was still pending at the time the court entered judgment. The court entered a separate order concurrent with the judgment explaining that Respondents' motion for contempt would remain under submission pending the receiver's report of an accounting of Church funds. It appears from the docket entries that the receiver filed an "interim report" shortly thereafter, but no further action has been taken on the contempt motion or the receivership.

## Finality and Appealability of Judgment

After Appellants filed their notice of appeal, the trial court ordered that the equitable accounting was stayed during the appeal, and the contempt motion was ordered to remain under submission. After Appellants' brief was filed, this Court ordered Appellants to show cause why the appeal should not be dismissed. At that time, we indicated there did not appear to be a final judgment, partly because the disposition of claims was unclear from the existing legal file and partly because Respondents' equitable accounting claim appeared to be still pending in the trial court. The receiver had been appointed, but the final accounting had not yet occurred.

In response to that order, Appellants filed a supplemental legal file, which includes the trial court's certification under Rule 74.01(b) that there is no just reason for delay of the appeal. It found "that while a cause of action remains pending in the trial court as to all parties, the remaining cause of action is for contempt concerning [Barnaby's] alleged use of church funds to pay personal attorney fees and therefore the factual underpinnings of the claims are not intertwined, that similar relief cannot be

4

awarded in each separate Count and further that determination of the claims pending in the trial court will not moot the claim being appealed." This Court then issued another order indicating that while it appeared there was now an appealable judgment, it was for this panel of judges to whom the case has been assigned to finally determine ourselves whether certification was appropriate. See Gibson v. Brewer, 952 S.W.2d 239, 244 (Mo. banc 1997). We find that it was.

The parties' competing claims for declaratory relief were finally and completely disposed of in the judgment entered in favor of Repsondents and against Appellants. But Respondents' equitable accounting claim has not been finally resolved: the receiver has not filed its final accounting, the court expressly stayed the receivership, and there remains pending a motion for contempt that cannot be resolved until the receiver's accounting. Thus, there remains much for future determination, and the judgment on that claim is not final and appealable. See Glick Finley LLC v. Glick, 310 S.W.3d 713, 716 (Mo. App. E.D. 2010). Because the declaratory relief and equitable accounting claims are not based on the same underlying facts and require the application of different law to enforce different legal rights, they are distinct judicial units.[2] See generally First Community Credit Union v. Levison, 395 S.W.3d 571, 580 (Mo. App. E.D. 2013) (judicial units are distinct and separately appealable when the claims have different factual underpinnings and different applicable law). Moreover, although it appears the

---

[2] The equitable accounting claim alleged that Appellants mismanaged and misappropriated Church funds—including that Barnaby was using Church funds to pay his personal attorneys fees—and that the Church accounts were complicated. They claimed that Appellants, while in control of Church business, had a fiduciary responsibility to Respondents, "the Church and its members to appropriately manage Church finances." They contended they had no adequate remedy at law and needed an accounting to determine the amount of funds being misused. These facts are wholly distinct from the facts underlying the parties' respective requests for declarations that their actions under the Church bylaws were valid and the other parties' actions were void. Moreover, to grant declaratory relief to either party in this case requires application of Missouri nonprofit law, as opposed to the principles of equity at play on the accounting claim.

5

trial court has not taken any further action on the equitable accounting claim or contempt proceeding, any determination thereon would not moot this appeal. See id. at 581. We agree that there is no just reason to delay appeal of the declaratory judgment claim while the equitable accounting claim remains pending in the trial court.

## Authority of Courts and Ecclesiastic Doctrine

We turn now to the issues on appeal. In Point I, Appellants contend that the civil courts do not have jurisdiction to determine the validity of the Church's membership removal process because it is an ecclesiastic matter for the Church to decide without interference from the secular courts. Our subject matter jurisdiction derives solely from Article V, Section 14 of the Missouri Constitution, which provides that we have jurisdiction over all civil cases and matters. J.C.W. ex rel. Webb v. Wyciskalla, 275 S.W.3d 249, 253 (Mo. banc 2009). Thus, we may only exercise our jurisdiction over this case if it is civil in nature and does not entangle the court in a religious matter. Courts must refrain from becoming entangled in questions that are religious, but are allowed to decide issues involving a church when it can be done using neutral principles of law. First Missionary Baptist Church of Ballwin v. Rollins, 199 S.W.3d 823, 827 (Mo. App. E.D. 2006). "The First Amendment does not preclude the court's involvement in church disputes where the issue is one which deals purely with a religiously neutral civil law." Id. Appellants support their claim that this is an ecclesiastic matter by citing to cases in which the ousted member's or leader's qualifications or grounds for their removal were at issue, which depended on their adherence to religious doctrine. See Rolfe v. Parker, 968 S.W.2d 178 (Mo. App. W.D. 1998) (neutral principles of law used to interpret church bylaws and determine that Quorom of Apostles was proper governing body, but "ultimate

6

issue" was appellants' qualifications as Apostles, which rested on "revelations from God"); Askew v. Trustees of the General Assembly of the Church of The Lord Jesus Christ of the Apostolic Faith, Inc., 684 F.3d 413 (3rd Cir. 2012) (propriety of member excommunication involved religious matters, such as whether members lived consistently with church doctrine and whether excommunication was "necessary for the good of the Church"); but see Rollins, 199 S.W.3d 823 (court's use of neutral church directory to determine membership eligibility for voting in court-ordered election of board of directors under nonprofit act did not infringe on First Amendment rights).

The issue in this case is not why Birch and Hellman were removed as members. The only question is whether Barnaby's authority under the bylaws to unilaterally remove members—thereby disqualifying them from service on the board—and authority to thereafter appoint new directors was consistent with Missouri nonprofit law. Appellants cite the stated purpose of the bylaws—to provide rules for governing the Church "according to the scriptures, so that we may advance in the will of God (Titus 1:5; I Cor. 12:28)"—for the proposition that all the procedures set forth in the bylaws are based on deeply held religious belief outside the purview of court review. This language does not, however, render the interpretation of every bylaw an ecclesiastic matter. If it did, the courts would never have subject matter jurisdiction to hear civil cases involving religious organizations incorporated under Missouri nonprofit law and there would be no need for the neutral principles doctrine.

Appellants also claim that the "very procedure of delegating the power of determining who is qualified to be a member of a church to the pastor is clearly an ecclesiastical matter." They cite a long-standing Judeo-Christian tradition, based on

7

scripture, of giving one church elder the authority to appoint other church leaders and to excommunicate members, claiming that to find the issue in this case non-ecclesiastic would "fly in the face of thousands of years of church history." That claim distorts the issue, though. The delegation of authority to the pastor may be rooted in a religious belief that the pastor is, as the bylaws say, a "feeder of the flock of God, taking the oversight thereof." But whether his unilateral authority to remove members is consistent with Missouri nonprofit law is not a religious matter. As is clear from our discussion of the merits below, courts can answer that question without becoming entangled in the underlying religious reasons for granting the pastor such authority or the underlying religious reasons for removal of these particular members. In fact, there is no dispute about either of those matters—Respondents do not argue that Barnaby was not appropriately chosen as pastor in the first place and do not claim that his reasons for removing them were invalid. There is not even a dispute that the bylaws on their face give Barnaby unilateral authority to remove members and appoint directors. The only question is whether that authority itself, as exercised in this case, is permissible under Missouri law.

In short, because the Church was incorporated under Missouri nonprofit law, it has submitted to the state courts all matters of a corporate nature. Beth Hamedrosh Hagodol Cemetary Association v. Levy, 923 S.W.2d 439, 443 (Mo. App. E.D. 1996). To answer the issue in this case, we need only look at the religiously neutral principles of law contained in the Missouri nonprofit statute and whether the bylaws are consistent therewith. Thus, the case is civil in nature, and does not require the trial court or this

8

Court to "delve into matters of religious doctrine, ritual, or practice." Rollins, 199 S.W.3d at 830.

Point I is denied.

Bylaws and Missouri Nonprofit Act

In Point II, Appellants argue that the trial court erred in entering summary judgment for Respondents because the Church bylaws are not inconsistent with Missouri nonprofit law and that, under those bylaws, all the actions Barnaby took were valid. They contend that nothing in the nonprofit statute prohibits the delegation of authority to remove members or appoint and remove directors to a single person. Respondents counter that the collective effect of the bylaws give Barnaby the power to unilaterally decimate the board of directors and leave himself the only director, which is inconsistent with Missouri nonprofit law requiring the corporation's affairs be managed by a board of directors of not fewer than three people.

The propriety of summary judgment is purely an issue of law, and our review is essentially *de novo*. ITT Commercial Finance v. Mid-America Marine Supply, 854 S.W.2d 371, 376 (Mo. banc 1993). We must decide the proper legal conclusion to be drawn from the undisputed material facts presented in the parties' cross-motions for summary judgment, giving no deference to the trial court's conclusion. See id.; see also Byers v. Auto-Owners Insurance Co., 119 S.W.3d 659, 662 (Mo. App. S.D. 2003).

Because the Church was incorporated under the Missouri Nonprofit Corporation Act, the Act governs. See Section 355.001, *et seq.* Nonprofit corporations are required to have bylaws, which "may contain any provision for regulating and managing the

9

affairs of the corporation that is not inconsistent with law or the articles of incorporation." Section 355.116.

First, we must determine whether Barnaby's authority to remove Birch and Hellman as members of the Church under the bylaws is consistent with Missouri law. We find that it is. The bylaws provide a number of ways in which members can be disciplined in Article II, Section 4:

Section 4. Church Discipline

1.    Any member failing or refusing after the first and second admonitions to keep the obligations and abide by the rules of the church shall be suspended . . . or dealt with according to the following methods:

a). If any member of this church be overtaken in a fault, he or she shall be dealt with according to Gal[atians] . . .
b). Any grievance arising between individual members of this church shall be dealt with according to Matt[hew] . . . Should the accused be found guilty by the church, he or she may be disfellowshipped from the church and his name be dropped from the membership roll unless he or she truly repents and makes public confession.

2.    No member of Spirit and Truth Church of St. Louis, Missouri shall:

a). Be guilty of . . .
b). Refuse to abide . . .
c). Rebel against . . .
d). Sympathize with . . .
e). Sympathize with . . .
f). Seek to threaten . . .
g). Neglect attending . . .
h). Seek to incite . . .
i). Seek to bring charges . . .

1.    When the pastor sees that any such condition exists which threatens the peace and tranquility of the church or that is contrary to the By-Laws of the church, he shall admonish the errant member either in private or public, and that

10

> failing, the Pastor shall have the power to pursue any of the following courses of action that he deems advisable.
>
> j).  Suspend the membership . . .
>
> k).  Issue to them a letter of release . . .
>
> l).   In case of deep sin, or stubborn and willful disobedience and rejection of all admonitions to repent and make restitution, the Pastor shall have right to withdraw fellowship from them completely.
>
> 1.    Such actions from the Pastor shall be final.

The paragraphs and subparagraphs in Section 4 are not labeled consistently.  The paragraph labeled number "1" after subparagraph i appears to be a new subject about the pastor's power to discipline members, but then the subparagraphs that follow continue the previous alphabetical labeling "j" "k" and "l" when enumerating the actions he is authorized to take under paragraph 1.  Paragraph 1 should have been labeled "3," and then the lettered subparagraphs thereunder should have started over with "a" to be clear that the list was not a continuation of prohibited conduct in paragraph 2.  That mislabeling—coupled with the similarity in appearance between the lowercase letter "l" and the number "1"—seems to have caused some confusion and disagreement as to which particular paragraph Barnaby cited as his basis for removing Birch and Hellman. It appears to this Court that Barnaby cited to the following paragraph when he stated in the consent action that removal was "in accordance with Article II, Section 4, (l)":

> In case of deep sin, or stubborn and willful disobedience and rejection of all admonitions to repent and make restitution, the Pastor shall have right to withdraw fellowship from them completely.

Respondents suggest that he actually may have cited to subparagraph 1(b) in the bylaws, which applies when there are grievances between members and requires a finding of guilt

11

by the Church before the accused is removed.  But Barnaby's citation did not include a "b" and, therefore, we cannot conclude that is the bylaw he was purporting to act under.

In any case, the confusion and disagreement does not amount to a genuine issue of material fact because ultimately it is undisputed that the bylaws authorize the pastor in some circumstances to unilaterally remove members and that Barnaby purported to act under such unilateral authority when he removed Birch and Hellman without seeking other approval.  Moreover, Respondents' position is that the "collective effect" of the member removal authority together with the disqualification bylaw renders Barnaby's action inconsistent with Missouri nonprofit law.  They do not claim that the authority for unilateral removal *alone* is inconsistent with the Act.

Such an argument would fail anyway, as the only portion of the Act referring to expulsion or suspension of members of a nonprofit corporation expressly excludes churches:

> 355.211. Expulsion or suspension of members
>
> 1. No member of a public benefit corporation *other than a church or convention or association of churches or mutual benefit corporation* may be expelled or suspended, and no membership or memberships in such corporations may be terminated or suspended except pursuant to a procedure which is fair and reasonable and is carried out in good faith.  In no event shall suspension of a member's right to use amenities, recreational facilities or such other facilities as that member may be entitled to, be considered to be a suspension by any such corporation of such member.

(emphasis added).  Respondents claim that this provision does not provide support for Appellants' idea that unilateral removal of members is allowable under the Act.  But that is not the point.  The point is that the bylaw giving Barnaby authority to remove members unilaterally is not inconsistent with this or any other provision in the Act.  Again, that is

12

not really the crux of Respondents' argument. Their real problem is with the collective effect of removal from membership and the resulting disqualification from the board.

There is no dispute that having been removed as members, Birch and Hellman were disqualified from serving on the board of directors. Under Article III, Section 2.2 of the bylaws, directors[3] are required to be "members in good standing" of the Church. Respondents claim that removing Birch and Hellman as members, and thereby as directors, "eradicated" or "decimated" the board and left Barnaby a "board of one," in contravention of both the bylaws and the Act. We agree that total decimation of a board of directors or creation of a "board of one" would not be allowed under the Act or the bylaws because both require a board consisting of at least three directors. Article II, Section 1 of the bylaws provides that the board of directors consists of the pastor plus "at least two and not more than four" directors. That is consistent with the Act, which requires that nonprofit corporations have a board of at least three directors. Sections 355.316.1 and 355.321.2. But total decimation is not what happened in this case. Rather, at the same time Birch and Hellman were disqualified from the board of directors, Barnaby appointed D'Sa and Hall. There was never a "board of one." The board of directors had at least three people at all relevant times.

Respondents contend that Sections 355.316, 355.401 and 355.381 of the Act prohibit the unfettered discretion given to Barnaby in the bylaws and exercised in the consent action. Section 355.316 states: "[e]xcept as provided in this chapter, all corporate powers shall be exercised by or under the authority of, and the affairs of the corporation managed under the direction of, its board." Section 355.316.2 (emphasis

_____

[3] That bylaw actually calls the entire board of directors the "officers" of the Church, but the terms "officers" and "directors" appear to be interchangeable throughout the bylaws.

added). Section 355.401 requires a majority vote of a quorum of the directors present at a meeting for the board to act. The board may act by written consent without a meeting if the action is taken by all the directors, unless the bylaws provide otherwise. Section 355.381. The Church bylaws similarly state that the directors, "together with the Pastor, shall care for the business affairs of the church" and that a majority vote of the board present at any meeting is the "deciding factor with the approval of the Pastor. . .." Article III, Section 5.2; Article V.2.

In spite of those statutory provisions discussing actions by the board, certain authority can be delegated to someone other than the board. For instance, committees may be formed and may manage the corporation's affairs pursuant to Section 355.406. This delegation is expressly contemplated in the prefacing language of Section 355.316 "except as provided in this chapter." There are other provisions that also expressly allow for bylaws that authorize action by an individual instead of the board. Importantly for our case, Sections 355.326 and 355.351 authorize appointment and removal of directors by an individual:

> If the corporation has members, all the directors, except the initial directors, shall be elected at the first annual meeting of members, and at each annual meeting thereafter, *unless the articles or bylaws* provide some other time or method of election, or *provide that some of the directors are appointed by some other person or designated.*

Section 355.326.1(emphasis added). "Except as otherwise provided in the articles or bylaws, an appointed director may be removed without cause by the person appointing the director." Section 355.351.2(1). The Church bylaws provide for such appointment by the pastor: directors "shall be appointed by the Pastor . . . and may be re-elected by the Pastor to serve additional terms if the Pastor sees fit to do so." Article III, Section

14

5.1. The fact that both the bylaws and the Act also contemplate that some business would be conducted by majority vote of a quorum of the entire board or by unanimous written consent of the board does not render the provisions delegating certain authority to an individual invalid. Likewise, contrary to Respondents' argument, delegating some authority to an individual does not render the mandate for board management of certain corporate affairs in Section 355.316 meaningless.

Respondents argue that the validity of Barnaby's authority to appoint and remove directors is immaterial because he did not purport to exercise that authority to remove Birch and Hellman as appointed directors; rather, he was expressly acting under his authority to remove them as members of the Church. And, they claim, there remains some amount of factual dispute as to how Birch and Hellman came to be on the board of directors.[4] While this dispute may be irrelevant for purposes of discussing what actually happened in this case, the fact that the Act expressly allows an individual to have the sole authority to appoint and remove directors is relevant to our discussion of whether the collective effect of Barnaby's actions is inconsistent with the Act. Here, Barnaby's action in removing Birch and Hellman was not done as an act of the board; he was acting under his unilateral authority to remove members, which we have already found to be consistent with the Act. The consequence of exercising that authority—that his removal of them as members ultimately removed them as directors—is also wholly consistent with the Act. The Act expressly approves of an individual, instead of the board, having the very power given Barnaby in these bylaws: the authority to appoint and remove

---

[4] Barnaby claims he alone appointed Hellmann as a director, and Hellman claims Barnaby and Birch together appointed him and, therefore, he could only be removed by joint action of Barnaby and Birch. The parties also dispute whether Barnaby appointed Birch as director and vice-president. Appellants also point out that only the pastor could have appointed a director under the bylaws.

15

directors. See Section 355.326.1 and 355.351.2(1). Respondents have not even addressed the fact that the actions Barnaby took under the bylaws were consistent with these statutory provisions.

Respondents also argue that Appellants have admitted, *via* counsel, that the bylaws require a majority vote to conduct any Church business and that admission should be held against Appellants as inconsistent with the position they now take on appeal. First, whether the statement is by the attorney or the client, it cannot be deemed an admission against interest because it is not an acknowledgement of *fact*, but an interpretation of the bylaws, which is a legal question. See Hemphill v. Pollina, 400 S.W.3d 409, 414 (Mo. App. W.D. 2013) (statement by party-opponent admissible against interest if statement acknowledges "the existence of certain facts"); see also Billings v. Division of Employment Security, 399 S.W.3d 804, 809 n.1 (Mo. banc 2013) (employer's letter noting "last day worked" arguably an admission against interest, but "for purposes of the statute what constitutes 'last day worked' is a legal issue for the courts to resolve rather than a factual one that the employer can fix in time by the use of magic words.") Second, we have already concluded that the bylaw regarding a majority vote for Church business does not preclude delegation of certain authority to Barnaby and that such delegation is consistent with the Act. Thus, counsel's "admission" does not defeat Appellants' position anyway.

In sum, Barnaby's action removing Birch and Hellman as members was authorized under the Church bylaws and the Missouri Nonprofit Act. Having been removed from Church membership, Birch and Hellman were also disqualified from being directors. There is no dispute that having been so removed and disqualified, they would

16

have had no authority under the bylaws to act for the board or otherwise on behalf of the Church thereafter. Their purported attempt to remove Barnaby as pastor was void. Barnaby's appointment of D'Sa and Hall, who was then replaced with Sarpong, as directors was also proper under the bylaws and the Act.[5]

Point II is granted.

Point III need not be addressed because it relates only to the propriety of Birch's and Hellman's actions in the event they had *not* been properly removed as Church members and directors.

<u>Conclusion</u>

The judgment of the circuit court granting Respondents' motion for summary judgment on their claim for declaratory relief is reversed. The case is remanded to the trial court to enter judgment consistent with this opinion.

ROBERT G. DOWD, JR., Judge

Lawrence E. Mooney, P.J. and
Sherri B. Sullivan, J., concur.

---

[5] Appellants contend that if we declare Birch and Hellman non-members of the Church, then they have no standing to pursue their equitable accounting claim. As we have already determined, however, there is not a final judgment on the equitable accounting claim and it is not before us in this appeal. Therefore, we leave to the trial court the determination of whether our holding here has any impact on further proceedings on the equitable accounting claim.

17